Constance MARTIN

v.

The EASTON PUBLISHING
COMPANY et al.

Civ. A. No. 76–2899.

United States District Court,
E. D. Pennsylvania.

Jan. 24, 1980.

Stephen P. McGuire, West Chester, Pa., for plaintiff.

Roland Morris, Philadelphia, Pa., for defendants.

## MEMORANDUM AND ORDER

TROUTMAN, District Judge.

Chronicled previously, the history of and asseverations in this litigation no longer require expatiation.[1] The present dispute centers on a discovery order entered by the magistrate and directing plaintiff to answer certain interrogatories which defendants originally propounded in June 1978.[2] Shortly thereafter plaintiff filed answers and did not object to any questions. However, defendants claimed that plaintiff's answers were so general that they failed to identify a single fact, witness or document supporting any of plaintiff's claims. Generally, defendants asked plaintiff to identify any experts or statisticians whom she consulted or expected to call at trial and to identify the persons, facts or documents upon which plaintiff intended to rely in proving her claims of sex discrimination. In essence, plaintiff replied that she had not decided whether to retain any experts or statisticians and that all of the other information which defendants requested could be located either in her notebooks,[3] depositions, or in employment information sup-

1. *See Martin v. Easton Publishing Co.,* 73 F.R.D. 678 (E.D.Pa.1977), *Martin v. Easton Publishing Co.,* 77 F.R.D. 439 (E.D.Pa.1977) and *Martin v. Easton Publishing Co.,* 478 F.Supp. 796 (E.D.Pa.1979).

2. Plaintiff also moved for a protective order, for a stay of the magistrate's discovery order of October 18, 1979, for reconsideration of the motion to compel and for certification of the magistrate's order as appealable under 28 U.S.C. § 1292(b). Plaintiff filed an appeal with the United States Court of Appeals for the Third Circuit but voluntarily withdrew the matter, January 9, 1980.

3. During her testimony at deposition plaintiff relied upon three notebooks in which she compiled information concerning defendants' allegedly discriminatory treatment of her. The magistrate granted defendants' motion to compel production thereof on April 13, 1978 and denied plaintiff's motion for reconsideration by order dated April 18, 1978. The Court denied plaintiff's motion for reconsideration of this order, May 18, 1978. Plaintiff's attempt for review of these decisions met rebuff when the Court of Appeals denied plaintiff's petition of mandamus on June 16, 1978. Only when defendants filed a motion to dismiss for failing to comply with the court orders did plaintiff relinquish the notebooks.

plied by defendant.[4] More specifically, plaintiff argued that her deposition testimony and notebooks amply provided the requested information and that ordering plaintiff to shoulder the inevitably substantial cost of clerical and legal services in ferreting this information from the discovery material imposed an intolerable burden on plaintiff and seriously jeopardized her ability to prepare her own case. The magistrate granted defendants' motion to compel. Plaintiff now appeals from that order.

In the first two interrogatories defendants seek to learn whom plaintiff expects to call as an expert witness at trial and whom plaintiff specially consulted or employed in preparation for trial but does not expect to call as a witness.[5] Plaintiff replied that to date she has not employed or consulted any experts in preparing her case. Nor did she anticipate calling an expert to testify at trial. However, plaintiff did reserve the right to do so at some future date.

 The identity of experts to be called at trial or specially employed or consulted in preparation therefor clearly lies within the scope of Fed.R.Civ.P. 26(b)(4). *Roesberg v. Johns-Manville Corp.,* 85 F.R.D. 292 (E.D.Pa.1980). At the outset of the case plaintiff may not have decided whether to retain or consult any experts. However, almost four years have now elapsed since plaintiff filed her suit. The magistrate originally ordered completion of discovery by October 1978. The case rapidly approaches the eve of trial. To require plaintiff to commit herself now requires no more of her than any other litigant whose day in court draws nigh. Defendants need this information in order to prepare for cross-examination and to decide whether to employ their own expert.

In Interrogatory Three defendants want to know if plaintiff intends to call a statistician at trial. In Interrogatory Four defendants ask plaintiff to state the statistical

bases of her claims.[6] As noted above, at this stage of the litigation defendants are entitled to know whether plaintiff expects to use statistical evidence as proof of her claims. Whether defendants should prepare statistical testimony in response thereto and what kind and concerning what issues of statistical proof defendants should anticipate all depend on plaintiff's decision to call a statistician or to use statistics as proof of discrimination. This knowledge is also essential for defendants to prepare cross-examination. Defendants cannot know what, if any, statistics plaintiff intends to offer or on what issues she will attempt to use statistics to buttress her individual case. General statistics relating to employment policies "may not be in and of themselves controlling as to an individualized . . . decision, particularly in the presence of an otherwise justifiable reason" for the employer's actions. *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 805 n. 19, 93 S.Ct. 1817, 1826, 36 L.Ed.2d 668 (1973). Even more importantly,

> [i]f the defendants in a Title VII suit believe there to be any reason to discredit plaintiffs' statistics that does not appear on their face, the opportunity to challenge them is available to the defendants just as in any other lawsuit. They may endeavor to impeach the reliability of the statistical evidence, they may offer rebutting evidence, they may disparage in arguments or in briefs the probative weight which the plaintiffs' evidence should be accorded.

*Dothard v. Rawlinson,* 433 U.S. 321, 338, 97 S.Ct. 2720, 2731, 53 L.Ed.2d 786 (1977). Once again, to require plaintiff to decide whether she will use statistical evidence *at this late point in the proceedings* is necessary to expedite the case to trial and to afford defendants a fair opportunity to also present their evidence.

 In Interrogatories Five through Eight defendants want plaintiff to divulge

---

4. We find it unnecessary to reach defendants' contention that plaintiff's motions were untimely.

5. See Appendix at 317.

6. See Appendix at 317–318.

her knowledge of any individual circumstances (other than those affecting her specifically) which she contends would indicate a pattern and practice of discrimination.[7] More specifically, these interrogatories require plaintiff to identify evidence which supports her claim that her treatment was typical of a pattern and practice of sex discrimination by defendants. Plaintiff referred defendants to her three notebooks, which consist of approximately 630 pages, deposition transcripts which cover almost 2000 pages of testimony, and to employment data supplied by defendants.[8] Plaintiff cannot escape her responsibility of providing direct, complete and honest answers to interrogatories with the cavalier assertion that required information can be found in this massive amount of material. Rather, plaintiff must state specifically and identify precisely which documents will provide the desired information. *Flour Mills of America, Inc. v. Pace,* 75 F.R.D. 676 (E.D.Okl.1977), *Kozlowski v. Sears, Roebuck & Co.,* 73 F.R.D. 73 (D.Mass.1976), *Budget-Rent-A-Car of Missouri, Inc. v. Hertz Corp.,* 55 F.R.D. 354 (W.D.Mo.1972). Defendants are entitled to know the factual content of plaintiff's claims with a reasonable degree of precision. *Harlem River Consumers Cooperative, Inc. v. Associated Grocers of Harlem, Inc.,* 64 F.R.D. 459 (S.D.N.Y.1974). Incorporation by reference to a deposition is not a responsive answer, for "[t]he fact that a witness testified on a particular subject does not necessarily mean that a party who is required to answer interrogatories adopts the substance of the testimony to support his claim or contention." *J. J. Delaney Carpet Co. v. Forrest Mills, Inc.,* 34 F.R.D. 152 (S.D.N.Y.1963). Plaintiff also cannot answer one interrogatory simply by referring defendants to another equally unresponsive answer. *Trabon Engineering Corp. v. Easton Manufacturing Co.,* 37 F.R.D. 51 (N.D.Ohio 1964).

In Interrogatories Nine and Ten defendants inquire of plaintiff when an alleged conspiracy transpired, the parts played by each defendant and what acts constituted this conspiracy.[9] Plaintiff's answers parrot ones described above. For the reasons already articulated, plaintiff must answer these questions with specificity and without reference to her notebooks and deposition testimony *generally,* for defendants are entitled to know specific information—names, dates, times, places, documents—in order to know precisely what plaintiff has accused them of doing. *Harlem River Consumers Cooperative, Inc. v. Associated Grocers, of Harlem, Inc., supra.*

In Interrogatory Eleven defendants explore the factual basis of plaintiff's contention that the Company's pregnancy policy was discriminatory.[10] Plaintiff responded that she had not completed discovery on this issue and reserved the right to answer more fully at a future date. That time has come. Plaintiff shall answer this interrogatory with specificity or she will be barred from offering testimony or evidence relating to this claim at trial.

In Interrogatories Twelve and Thirteen defendants ask plaintiff to identify with which men she compares herself to show discriminatory treatment.[11] Again plaintiff referred defendants to her notebooks and deposition testimony. Plaintiff also adverted "[b]y way of further answer . . . to those male individuals on the [newspaper] staff during the period of time in question." General references to "those male individuals on the staff" and to "contents of the notebooks" afford little or no clue to and certainly provide no basis upon which defendants can prepare for trial. Plaintiff cannot simply rely on this amalgamation of material to meet her discovery obligations.

In Interrogatories Fourteen through Sixteen defendants want to know if plaintiff claims that any parties to this suit have

---

7. See Appendix at 318–319.

8. This information related to 124 employees. Plaintiff photocopied 1500 pages thereof.

9. See Appendix at 319–320.

10. See Appendix at 320.

11. See Appendix at 320.

made any admissions.[12] Again, general reference to plaintiff's notebooks and the parties' deposition testimony will not suffice.

In Interrogatory Seventeen defendants ask plaintiff to identify all documents which she intends to use at trial to support her claims of discrimination in compensation, job assignment, promotion and other conditions and privileges of employment.[13] Plaintiff answered that she had made "no decision at this point with respect to the documents she intends to use at trial but may use portions of the contents of her notebooks, depositions of [certain Company employees] and employment data provided by defendants . . . [although this] list is not meant to be . . . exhaustive." This answer no more than states the obvious. Without identification of specific documents or particular page references, defendants cannot be expected to present an adequate or meaningful defense. *Harlem River Consumers Cooperative, Inc. v. Associated Grocers of Harlem, Inc., supra.*

■ In Interrogatories Eighteen and Nineteen defendants seek to discover the basis of plaintiff's calculation of damages.[14] Where a plaintiff alleges loss of income because of a defendant's actions the assumption that plaintiff is in a position to furnish details is a reasonable one. Plaintiff's inexact responses to these questions are insufficient. *Harlem River Consumers Cooperative, Inc. v. Associated Grocers of Harlem, Inc., supra.*

■ One final observation merits attention. To resist answering interrogatories, plaintiff cannot invoke the defense of oppressiveness or unfair burden without detailing the nature and extent thereof. Simply decrying the expense to plaintiff will not satisfy this obligation. Rather, plaintiff "must show *specifically* how . . . each interrogatory . . . is . . . burdensome or oppressive." As the party resisting discovery, plaintiff has the burden to "clarify and explain its objections and to provide [factual] support therefor." *Roesberg v. Johns-Manville Corp.*, 85 F.R.D. at 292.

■ Ultimately, the question of what constitutes satisfactory responses to interrogatories rests within the sound discretion of the Court and includes the consideration of undue burden to the parties. *Western Electric Co. v. Stern,* 551 F.2d 1 (3d Cir. 1976). Plaintiff has neither detailed her "undue burden" nor provided satisfactory responses to defendants' interrogatories. Accordingly, defendants' renewed motion to compel will be granted.

### ORDER

AND NOW, this 30th day of January, 1980, IT IS ORDERED that the order of United States Magistrate Richard A. Powers, III, dated October 18, 1979, is AFFIRMED in all respects. Defendants' renewed motion to compel is GRANTED. IT IS FURTHER ORDERED that by February 29, 1980, plaintiff shall answer *fully and specifically* each of defendants' interrogatories, including, where appropriate, identifying specific page references to deposition transcripts and to plaintiff's notebooks, and complying with defendants' definitions in all respects. Plaintiff shall neither offer nor introduce at trial any facts, documents or admissions not set forth with specificity in answers to Interrogatories One, Three, Four, Five, Six, Seven, Eight, Twelve, Thirteen, Fourteen, Fifteen, Sixteen, Seventeen, Eighteen and Nineteen.

IT IS FURTHER ORDERED that plaintiff's motion for certification of the discovery order of October 18, 1979, for appeal pursuant to 28 U.S.C. § 1292(b) is DENIED as moot and that plaintiff's motion for a stay of the magistrate's order is DENIED as moot.

Any further procrastination or delay attributable to plaintiff in answering these

---

12. See Appendix at 320–321.

13. See Appendix at 321.

14. See Appendix at 321.

interrogatories will invite imposition of sanctions.[15]

### APPENDIX

*Interrogatory No. 1:*

1. With respect to each expert whom plaintiff has consulted (or experts to consult) in the preparation of her case and whom the plaintiff expects to call as an expert witness during the trial of this case, give the following information:

(a) identify each such expert;

(b) state fully the qualification of each such expert including, without limitation:

1. the educational background and any other expert qualifications of each such expert;

2. a list of all articles, books, treatises, etc. which each such expert has authored, edited, or in any way contributed to;

3. list every case in which each such expert has testified as an expert witness, giving the court, term and docket number of each such case, and include as to each such case a general statement of the subject areas of expertise testified to;

4. list each instance on which each such expert has given public testimony, a speech, or made public remarks, giving for each such incident the date and occasion thereof;

(c) as to each such expert, state precisely the subject matter and the specific act, practice or policy of the Company on which each such expert is expected to testify;

(d) as to each such expert, state separately as to each act, practice or policy identified in (c) above, each and every fact and opinion to which such expert is expected to testify in the trial of this action;

(e) as to each opinion set forth in the answer of (d) above, state precisely the grounds on which each such opinion is based, and identify any texts, treatices [sic] or written statement which the expert has used or is expected to use or on which the expert relies or is expected to rely for such opinions;

(f) identify all documents (including, without limitation, all reports, statistical data and underlying data supporting same) which plaintiff has received from any experts retained or consulted by plaintiff that plaintiff expects to or may use at trial as proof of discrimination.

*Answer to Interrogatory No. 1:*

1. (a)–(h) Plaintiff has not consulted any expert in the preparation of her case at this time nor has Plaintiff decided to retain an expert for purposes of trial at this time. However, Plaintiff reserves the right to do so at some future date.

*Interrogatory No. 2:*

2. Identify each person who has been retained or specifically employed by plaintiff as an expert in this case but who is not expected to be called as an expert witness in the trial of this action.

*Answer to Interrogatory No. 2:*

2. Plaintiff has not retained or specifically employed any expert at this time.

*Interrogatory No. 3:*

3. Does plaintiff intend to call any statistician as a witness at the trial? If yes, state:

a) The name and address of each such person.

b) Identify each statistical table, summary or compilation to be introduced through or referred to by each such person.

*Answer to Interrogatory No. 3:*

3. Plaintiff has made no decision at this point in time with respect to calling any statistician at trial.

*Interrogatory No. 4:*

4. State with particularity the statistical bases or support of plaintiff's claims in this action, including:

a) The precise claim to which any statistics or statistical summaries, studies or statistical analyses relate;

---

**15.** *See Al Barnett & Sons, Inc. v. Outboard Marine Corp.,* 611 F.2d 32 (3d Cir. 1979), *Riverside Memorial Mausoleum, Inc. v. Sonnenblick-* *Goldman Corp.,* 80 F.R.D. 433 (E.D.Pa.), and *Continental-Wirt Electronics Corp. v. Arico,* No. 79–2701 (E.D.Pa. January 8, 1980).

b) The precise statistics or statistical summaries, studies, compilations, or analyses which plaintiff or her experts intends to or may use at the trial of this action;

c) The source of the data on which such statistics or statistical summaries, studies, compilations or analyses identified in answer to (b) are based, including where such data was obtained (e. g., treatise, computer program, etc.) from whom such data was obtained (e. g., the Company, the Federal Government, etc.), and who compiled such data;

d) For each set of statistics or statistical summaries studies, compilations or analyses identified in [and] as to (b) above, identify the person(s) who compiled, devised, analyzed or otherwise produced such statis [sic] or statistical summaries, studies, compilations or analyses.

*Answer to Interrogatory No. 4:*

4. (a)–(d) Plaintiff has prepared various studies which are set forth in the reproduced contents of her notebooks which were tendered to Defendants on July 7, 1978.

5. Exclusive of:

1) Any statistical data, summaries or any expert testimony; and

2) Any facts that relate solely to specific acts of discrimination allegedly directed at or affecting solely the individually named plaintiff.

state with particularity all facts known to plaintiff (or if unknown to plaintiff, identify all persons having knowledge of such facts) which plaintiff intends to or may use at trial in support of the allegations made in paragraphs 22 and 23 of the Complaint that the plaintiff's claims arise from a pattern and practice of sex discrimination by the Company with respect to any of the following:

a) HIRING, including without limitation, such aspects of hiring as recruitment and advertising;

b) JOB ASSIGNMENT, including, without limitation, initial assignment, any alleged assignment of women to "less desirable jobs," beats assigned and assignment load;

c) JOB TITLES;

d) PROMOTIONS;

e) WORKING CONDITIONS;

f) FRINGE BENEFITS, including, without limitation, life insurance, health insurance, leaves, travel allowances, prizes and awards;

g) EMPLOYMENT REQUIREMENTS to evaluate women applicants for employment and promotions;

h) SALARY, including without limitation, failures and/or refusal to pay women on an equal basis with men for substantially equal work;

i) TERMINATIONS, including, without limitation, the procedures and criteria therefore;

j) APPLICATION OF DIFFERENT STANDARDS BY SEX, including, without limitation, application or more exacting or arbitrary standards and conditions to women than to men who are similarly trained or qualified;

k) HARASSMENT, including, without limitation, harassment by means of any conditions of employment, and harassment after individuals have left the employ of the Company;

l) OPTIONS TO TRANSFER;

m) DEROGATORY REMARKS REGARDING WOMEN, including, without limitation, any alleged remarks by the Company.

*Answer to Interrogatory No. 5:*

5. (a)–(m) See the material set forth in the reproduced copies of Plaintiff's notebooks as well as the material set forth in the depositions of Constance Martin, Robert Jodon, James Hairston, Doris Whitehead and the employment data supplied by Defendants. Plaintiff has made no decision as to whom she may use at trial at this juncture and is not obligated to do so at this point. Of course, Plaintiff has not complet-

ed discovery and does not intend this answer to be exhaustive.

*Interrogatory No. 6:*

6. Identify separately as to each subsection of Interrogatory 5 all documents which plaintiff intends to or may use at trial in support of each claim in each subsection of Interrogatory 5.

*Answer to Interrogatory No. 6:*

6. Plaintiff has identified the documents in question in her answer to Interrogatory # 5 and incorporates that answer herein.

*Interrogatory No. 7:*

7. Exclusive of:

1. Any statistical data, summaries or any expert testimony; and

2. Any facts that relate solely to specific acts of discrimination allegedly directed at or affecting solely the individually named plaintiff;

3. Any facts set forth in response to Interrogatory 5,

state with particularity all facts known to plaintiff (or if unknown to plaintiff, identify all persons having knowledge of such facts) which plaintiff intends to or may use at trial in support of the allegations made in this case that the Company had engaged in a pattern and practice of sex discrimination with respect to any act, practice or policy not specific in Interrogatory 5.

*Answer to Interrogatory No. 7:*

7. See the reproduced contents of Plaintiff's notebooks which Plaintiff has tendered to Defendants on July 7, 1978 as well as the deposition of Robert Jodon, James Hairston, Doris Whitehead and Constance Martin and the employment records tendered by Defendants to Plaintiff. Plaintiff has made no decision with respect to whom she may use at the trial as a witness and is under no obligation to do so at this point in time.

*Interrogatory No. 8:*

8. Identify all documents which refer or relate to the acts, practices or policies set forth in Interrogatory 7.

*Answer to Interrogatory No. 8:*

8. Plaintiff incorporates her answer to Interrogatory No. 7 herein.

*Interrogatory No. 9:*

9. With respect to the alleged "conspiracy" referred to in paragraphs 17, 28 and 29 of the Complaint, state the time period during which you claim such alleged "conspiracy" existed and state when and under what circumstances it was commenced and when and under what circumstances it was terminated.

*Answer to Interrogatory No. 9:*

9. The conspiracy existed from the time Constance Martin was initially hired and terminated at the time of her firing. The facts and circumstances of the conspiracy are set forth in the reproduced contents of Plaintiff's notebooks which have been tendered to Defendants as well as the depositions of Robert Jodon, James Hairston, Doris Whitehead, Constance Martin and the employment data tendered to Plaintiff by Defendants.

*Interrogatory No. 10:*

10. With respect to plaintiff's allegation of conspiracy in paragraphs 17, 28 and 29 of the Complaint, state separately with respect to each of the named defendants in this action:

a) Each act or the part each defendant that is claimed to constitute part of such conspiracy;

b) The date or dates of each such act;

c) The person or persons who performed each such act, and, if applicable, identify each person who allegedly authorized or ordered such participation;

d) The place or places where each act took place;

e) Identify each person who has knowledge of the events referred to in your answer to this interrogatory, and;

f) Identify each document which refers or relates to any matter mentioned in your answer to this interrogatory.

*Answer to Interrogatory No. 10:*

10. (a)–(g) Plaintiff incorporates herein the answer to Interrogatory # 7 and further answers that Plaintiff's discovery is incomplete at this juncture.

*Interrogatory No. 11:*

11. With respect to the allegation in paragraph 23(f) of plaintiff's Complaint concerning the Company's pregnancy policies:

a) Identify each and every woman you contend suffered discrimination in connection with pregnancy;

b) State separately as to each person identified in (a) above every benefit which you contend she should have received but she did not;

c) Identify all documents which refer or relate to the facts set forth in your answer to (a) and (b) above.

*Answer to Interrogatory No. 11:*

11. (a)–(c) Plaintiff has not completed discovery with respect to this issue and reserves the right to answer more fully at a future date.

*Interrogatory No. 12:*

12. Identify each man employed by the Complaint who plaintiff considers as alleged in paragraph 16 of her Complaint to be her peer and as to each:

a) State the time period during which he was plaintiff's peer;

b) State with particularity each respect in which plaintiff was subjected to more difficult scheduling;

c) State with particularity any other respect in which each was treated better than plaintiff;

d) Identify all documents which refer or relate to the subject matter of this interrogatory.

*Answer to Interrogatory No. 12:*

12. (a)–(d) See the reproduced contents of Plaintiff's notebooks which were tendered to Defendants on July 7, 1978 in which Plaintiff discusses this matter. By way of further answer, Plaintiff is refer-

ring to those male individuals on the Metro staff during the period of time in question. In addition, see the deposition of Constance Martin.

*Interrogatory No. 13:*

13. Identify each man employed by the Express who was subject to lesser standards of subordination than plaintiff. As to each state with particularity each instance of lesser subordination.

*Answer to Interrogatory No. 13:*

13. See the reproduced contents of Plaintiff's notebooks which were tendered to Defendants on July 7, 1978 and the deposition of Constance Martin.

*Interrogatory 14:*

14. State whether any admissions were made by or on behalf of any parties in this action.

a) Identify any writings relating to or referring in any way to each such admission;

b) If such admissions were oral, set forth the substance of each admission.

*Answer to Interrogatory No. 14:*

14. (a)–(b) See the reproduced contents of Plaintiff's notebooks which were tendered to defendants on July 7, 1978 as well as the depositions of Robert Jodon, James Hairston, Doris Whitehead, Constance Martin and the employment file of Constance Martin.

*Interrogatory No. 15:*

15. As to each oral admission set forth in your answer to Interrogatory 14(b), identify the person making the admission, the place at which such admission was made, the date on which it was made, and the circumstances surrounding the admission.

*Answer to Interrogatory No. 15:*

15. Plaintiff incorporates her answer to Interrogatory # 14 as if set forth in its entirety herein.

*Interrogatory No. 16:*

16. As to each oral admission set forth in your answer to Interrogatory 14(b), identify all persons present at the time such admissions were made.

*Answer to Interrogatory No. 16:*

16. Plaintiff incorporates her answer to Interrogatory # 14 as if set forth in its entirety herein.

17. With respect to plaintiff's allegations in paragraph 17 of her Complaint that she was discriminated against with respect to:

1. compensation;
2. job assignment;
3. promotion;
4. other conditions and privileges of employment,

identify separately as to each aspect of plaintiff's employment set forth in (1)–(4) above all documents which plaintiff intends to or may use at trial in support of each claim.

*Answer to Interrogatory No. 17:*

17. Plaintiff has made no decision at this point with respect to the documents she intends to use at trial but may use portion of the contents of her notebooks, depositions of Robert Jodon, James Hairston, Doris Whitehead and the employment files and data supplied by Defendants. This list is not meant to be an exhaust [sic] list.

*Interrogatory No. 18:*

18. Does plaintiff contend that she is entitled to back pay? If the answer is other than no:

a) State the amount of back-pay claimed by plaintiff;

b) State the earliest date when plaintiff asserts that she was entitled to back pay and the date her claim for back pay terminated;

c) State all facts necessary for the Company to understand how plaintiff calculates her claim for back-pay in paragraph (a); for example, $X per week for a period of Y weeks.

d) Identify all documents which plaintiff intends to or may use at trial in support of her claim for back pay.

*Answer to Interrogatory No. 18:*

18. (a)–(c) Yes. See the reproduced contents of Plaintiff's notebooks as well as her deposition, her Complaint, the depositions of Robert Jodon, James Hairston, Doris Whitehead, and the employment files and data supplied by defendants.

*Interrogatory No. 19:*

19. Does plaintiff contend that she is entitled to monetary damages in addition to back-pay, exclusive of attorney's fees and costs? If the answer to this Interrogatory is yes,

a) State the amount of monetary damages claimed by plaintiff;

b) State with particularity all facts upon which plaintiff relies for her claim that she is entitled to such damages;

c) State all facts necessary for the Company to understand how plaintiff calculates her claim for damages in paragraph (a);

d) Identify all documents which plaintiff intends to or may use at trial in support of her claim for damages.

*Answer to Interrogatory No. 19:*

19. (a)–(c) Yes. Plaintiff has set forth her thoughts concerning this matter in the reproduced contents of her notebooks which have been supplied to Defendants on July 7, 1978. In addition, see the depositions of Robert Jodon, James Hairston, Doris Whitehead, Constance Martin, as well as the employment files and data supplied by Defendants.