James S. MONROE, Sr., Plaintiff,

v.

Walter B. RIDLEY,[1] Director, D.C. Department of Corrections, Defendant.

Civ. A. No. 87-1717 (RCL).

United States District Court, District of Columbia.

Oct. 18, 1990.

See also 705 F.Supp. 621.

Richard Love, Asst. Corp. Counsel, Washington, D.C., for defendant.

Mitchell Kreindler, Wiley, Rein & Fielding, Washington, D.C., for plaintiff.

## MEMORANDUM OPINION AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on plaintiff's Supplement to his Motion to Compel Discovery and for Sanctions. Based upon the briefs and counsel's representations at hearings on the motion, this court finds that defendant willfully obstructed the discovery process and so enters a judgment of default against defendant and directs defendant to pay the costs plaintiff incurred in obtaining this order.

## BACKGROUND

Plaintiff, a former employee of the District of Columbia Department of Corrections, commenced this action on June 23,

1. Substituted pursuant to Rule 25(d), Fed.R. Civ.P.

■

1987. He sued defendant, who is director of the Department of Corrections, in his official capacity, seeking declaratory, injunctive, and monetary relief under Title VII of the Civil Rights Act of 1964 and under the Age Discrimination in Employment Act of 1967 (ADEA). Plaintiff voluntarily dismissed his claim of age discrimination under ADEA on January 19, 1989, and defendant's motion to dismiss the remainder of the complaint was denied on July 28, 1989.

Also on July 28, the court entered an order setting January 3, 1990 as the discovery cut-off date and scheduling the start of trial for March 16, 1990. Plaintiff served defendant with interrogatories and a request for production of documents on August 23, 1989. Defendant failed to file any responses or objections to plaintiff's discovery requests, and when the time for defendant's response had expired plaintiff's counsel telephoned defendant's counsel and inquired about the status of defendant's responses. Counsel for the parties informally agreed to a week's extension of defendant's deadline. Yet when this deadline expired on October 3, 1989, defendant had still not responded to plaintiff's requests, and on October 6 plaintiff filed a motion to compel discovery. Defendant did not contest the motion, and on October 31 this court issued an order pursuant to Fed.R. Civ.P. 37(a) directing defendant to respond to plaintiff's interrogatories and document requests within seven days. Defendant was also ordered, pursuant to Fed.R.Civ.P. 37(a)(4), to pay plaintiff $300 for the expenses he incurred in obtaining the order. On November 3, prior to receiving the court's October 31 order, plaintiff filed a motion requesting the court to treat his motion to compel as conceded and to impose further sanctions upon defendant.

Defendant failed to comply with the October 31 order, filing his responses to the court-ordered discovery five days late. In an order issued on November 16, this court then directed plaintiff to supplement his November 3 motion "by addressing what parts of that motion are now moot, and what sanctions and other relief plaintiff still seeks for defendant's failure to comply with the discovery requests and this court's order of October 31." Plaintiff filed a timely compliance on December 1, arguing that defendant's responses were not only late but "totally insufficient." Defendant responded, and plaintiff replied to defendant's response. On March 7, 1990, the court conducted a hearing on the issue of sanctions at which it vacated the trial date and requested plaintiff to submit proposed findings of fact and conclusions of law. Plaintiff did so, and defendant responded orally at a second hearing on April 10, 1990.

## DISCUSSION

### A. *Defendant has willfully disobeyed this court's orders*

■ Defendant cannot dispute that he failed to comply with the court's order of October 31. Defendant's responses to the court-ordered discovery were due on November 9, 1989, but were not filed until November 14.[2] Defendant was also at least five months late in paying plaintiff the $300 awarded by the court pursuant to Fed.R.Civ.P. 37(a)(4) (at the motion hearing on April 10, 1990, defendant's counsel admitted that this sum was still unpaid).

This failure alone does not necessitate a finding that defendant willfully disobeyed the court's order. Defendant's subsequent actions and statements have, however, provided ample proof that his noncompliance was willful. The clearest examples of defendant's willfulness have been his repeated assertions that his discovery responses are adequate. Defendant claims he has filed "responsive discovery responses" and "the best available documents."

---

**2.** Defendant claims he never received copies of plaintiff's motions of October 6 and November 3, 1989. *See* defendant's Reply to plaintiff's Supplement to his November 3, 1989 Motion to Compel (filed December 20, 1989) at 1 n. 1, 2 n. 3. Defendant's problems with his receipt of

mail cannot excuse his noncompliance. Defendant is not being sanctioned for failing to respond to plaintiff's motions, but for failing to respond to this court's October 31 order, which he apparently did receive.

Reply to Plaintiff's Supplement to his Motion to Compel (filed December 20, 1989) at 4, 5. At the March 7 status hearing defendant's counsel stated that he had provided "documents answering each and every interrogatory," and that "we did give everything, Your Honor, and we did respond very responsively.... [W]e did give the documents and our answers were very, very good.... We're not holding anything back." Transcript of Status Hearing, March 7, 1990, at 14, 18.

These assertions are demonstrably false. To begin with, defendant's interrogatory responses cannot constitute "answers" as they have not been signed and sworn in accordance with Fed.R.Civ.P. 33(a). *Continental Ins. Co. v. McGraw*, 110 F.R.D. 679, 682 (D.Colo.1986). Defendant's failure to sign the interrogatory responses has been brought to his attention several times, *see* Plaintiff's Supplement to his November 3 Motion to Compel (filed December 1, 1989) at 3; Transcript of Status Hearing, March 7, 1990, at 5, and defendant has still failed to have them signed.

Yet even if defendant's responses had been filed on time and signed, they would still be woefully inadequate. In his response to plaintiff's request for production of documents, defendant responded to all but one of the 27 requests with the words, "*See*, defendant's Responses to plaintiff's Interrogatories." In some rare situations such a response might be appropriate, but a party "cannot answer one interrogatory simply by referring ... to another equally unresponsive answer." *Martin v. Easton Publishing Co.*, 85 F.R.D. 312, 315 (E.D. Pa.1980). In this case defendant's responses to plaintiff's interrogatories were almost as inadequate and unresponsive as his responses to the requests for documents. A few examples will serve to illustrate the degree of defendant's dereliction:

— In response to plaintiff's interrogatories nos. 7 and 9, requiring defendant to identify all officers in plaintiff's probationary class who failed to complete a portion of any written test, defendant produced copies of written retention pre-examinations taken by eight of the fourteen members of plaintiff's probationary class. Defendant also produced a single page of a similar examination taken by plaintiff. Defendant failed to indicate whether any of the other six class members had taken retention pre-examinations, or whether any officer had failed to complete portions of any other test.

— Plaintiff's interrogatory no. 11 required defendant to provide specific information about the scope of the supervisory duties of persons who supervised the discharged members of plaintiff's probationary class. Defendant's response refers plaintiff to documents containing the names of persons who evaluated some members of the class. The documents fail to indicate whether these evaluators had supervisory responsibility, when they were charged with such responsibility, or where they exercised their responsibility.

— In response to plaintiff's interrogatory no. 22, requiring defendant to identify all procedures relating to the composition, appointment, selection or proceedings of the Department of Corrections retention board, defendant directed plaintiff to "*See*, Attachment numbered '2,' '3' and '24.'" Attachments 2 and 3 do not even mention the Department's retention board, and attachment 24 does not exist.

— In response to plaintiff's interrogatory no. 23, requiring defendant to identify and provide information about all posts or work assignments given to plaintiff during his eleven months of employment with the Department of Corrections, defendant produced a single shift schedule and a shift assignment for one week.

— In response to plaintiff's interrogatory no. 24, requiring defendant to provide information about the Department of Corrections document retention or destruction program, defendant directed plaintiff to two entirely unresponsive documents, a probationary officer shift schedule and a chapter from the personnel regulations of the Dis-

trict of Columbia concerning adverse actions and grievances.

— In response to plaintiff's interrogatory no. 29, requiring defendant to identify all Department of Corrections labor relations or equal employment opportunity personnel who counseled or interviewed plaintiff or who discussed plaintiff's termination with him, defendant inexplicably replied that he was "unaware of the persons who plaintiff spoke with at either the Department of Labor or the Equal Employment Opportunity Commission." Defendant then referred plaintiff to "documents accompanying defendant['s] answers to interrogatories" without specifying which, if any, of the papers in the two-inch-thick sheaf might contain information relevant to the question.

— Plaintiff's discovery requests directed defendant to provide specific information about each person defendant was required to "identify," including information about each person's race, employment, and last known address. *See* plaintiff's First Set of Interrogatories (filed August 23, 1989) at 4–5. Defendant has failed to provide this information for any of the persons he was required to identify.

— Despite having had over seven months to gather responsive documents, many of defendant's responses state that he "is in the process of obtaining information responsive" to certain interrogatories, *see* answers to interrogatories nos. 25 and 26, or will provide additional information once responsive documents are located, *see* answers to interrogatories nos. 3, 13, and 20. Defendant has produced no sup-

plementary information in the months since he filed his responses.[3]

Defendant has been on notice that his discovery responses are insufficient, and he has had plenty of time to gather information and re-submit them. Instead he has continued to insist that his responses are adequate, and this is a clear indication that his failure to obey this court's order is willful.

Defendant has also demonstrated bad faith by objecting to court-ordered discovery. In his responses to four of plaintiff's requests for documents and ten of plaintiff's interrogatories, defendant purported to respond with an "objection." Yet these responses were filed on November 14, 1989, after the court had already ordered defendant to answer plaintiff's interrogatories and requests for documents. When defendant filed his responses the time for objection was past; his only options were to answer, to ask the court to reconsider its order, or to face sanctions under Fed.R.Civ.P. 37(b). Defendant did not answer or move for reconsideration, and the court can only view his so-called "objections" as further proof of his intent to disrupt the discovery process and to prevent plaintiff from obtaining the information he needs to build his case.

Another sign of defendant's bad faith is his suggestion that plaintiff should be sanctioned for violating Local Rule 207, which requires that "motions to compel answers or responses [to interrogatories and requests for admission or for production of documents] shall identify and quote each interrogatory or request in full immediately preceding the answer, response or objection thereto." *See* defendant's Reply to plaintiff's Supplement to his November 3, 1989 Motion to Compel (filed December 20, 1989) at 3–4. Defendant argues that plain-

---

**3.** Plaintiff filed a supplemental report on October 3, 1990, pointing out that despite the representation of Assistant Corporation Counsel Alexander on the record at the April 10, 1990, hearing that defendant would produce additional discovery material and correct certain admitted deficiencies in his responses, nothing additional has been produced. Despite service of this report on defendant two weeks ago, the court's dockets fail to reflect that defendant has filed anything since the April 10 hearing, nor has defendant sought leave subsequently to file any additional responses out-of-time. Apparently, contrary to counsel's statements at the April 10 hearing, defendant determined to adhere to the position taken at the pretrial conference on March 7 that defendant's discovery responses were adequate and there was no need for supplementation.

tiff's motions to compel have "failed to quote fully the objectional discovery response and its accompanying request," and are therefore "disjointed, incomplete evidencing a true hodgepodge." *Id.* at 4. Defendant further claims that this supposed violation of Local Rule 207 entitles him to an award of attorney's fees and costs under Fed.R.Civ.P. 11, "to compensate him for plaintiff's abusive tactics interposed to harass." *Id.* Defendant's claim is unreasonable and frivolous. Obviously plaintiff's November 3 Motion to Compel could not have quoted each objectionable discovery response, as defendant did not submit any responses until November 14. Nor was plaintiff's December 1 Supplement required to quote each request and each response, as it was not a motion to compel pursuant to Fed.R.Civ.P. 37(a), but rather a memorandum requesting the court to enter a default judgment pursuant to Fed.R.Civ.P. 37(b)(2)(C). If any paper filed with this court should be classified as "abusive and oppressive" it is not plaintiff's well-organized and well-written December 1 Supplement, but defendant's rambling, incoherent December 20 Reply with its dilatory Rule 11 motion.

A final indication of defendant's bad faith is his suggestion at the March 7 hearing that his failure to respond to defendant's discovery requests should be excused because plaintiff has "no case" and is "wasting the court's time." Transcript of Status Hearing, March 7, 1990, at 16. Apparently defendant has decided that since he does not believe plaintiff has a meritorious case, he will comply with the court's orders and rules only on his own terms. Such a position is intolerable. Plaintiff is entitled to try to prove his case no matter what defendant may think of it, and defendant is therefore obliged to provide plaintiff with responses to his discovery requests. To even suggest that defendant's opinion of plaintiff's case should have any bearing upon the discovery process demonstrates willful disregard for the responsibilities defendant owes the court and his opponents.

## B. *Entry of default judgment is a necessary sanction*

A defendant who obstructs the discovery process for more than six months, willfully disobeys court orders, submits disorganized, deficient discovery responses, files a frivolous Rule 11 motion, and then announces in open court that he should not be punished because he personally believes his opponent's case lacks merit, clearly has little respect for the judicial system. Because defendant's willful misconduct has wasted the court's time, delayed the progress of this case for several months, and needlessly caused plaintiff to incur additional costs, sanctions are clearly warranted. This court need only determine the severity of the sanctions to be imposed.

Under Fed.R.Civ.P. 37(b)(2), a party's failure to comply with a Rule 37(a) order may justify the imposition of a broad range of sanctions. The least stringent of these is an order to reimburse the opposing party for expenses caused by the failure to cooperate. More severe are orders holding a party in contempt, prohibiting the introduction of evidence on particular points, striking portions of the pleadings, and treating disputed issues as conceded by the disobedient party. Harshest of all are orders of default judgment and dismissal. Plaintiff has asked the court to enter a default judgment against defendant and to award plaintiff the costs he has incurred as a result of defendant's misconduct.

In determining whether a default judgment should be entered, this court must consider "the effect of a plaintiff's dilatory or contumacious conduct on the court's docket, whether the plaintiff's behavior has prejudiced the defendant, and whether deterrence is necessary to protect the integrity of the judicial system." *Bristol Petroleum Corp. v. Harris,* 901 F.2d 165, 167 (D.C.Cir.1990) (citing *Shea v. Donohoe Const. Co.,* 795 F.2d 1071 (D.C.Cir.1986)). The first of these factors, the effect of defendant's disobedience upon the judicial system, argues strongly in favor of entering a default judgment. While the Federal Rules of Civil Procedure were designed to permit discovery to proceed without direct

supervision by the court, defendant's misconduct has occupied the court's attention with dozens of hearings and motions and has delayed the progress of this case by several months. Other litigants with meritorious cases have thus been denied the opportunity to obtain swift justice. If the court were to permit this litigation to continue, the burden on its docket would become intolerable. The discovery responses defendant has submitted are essentially worthless, and so this court would be obliged to begin the entire discovery process all over again, expending considerable judicial resources in addition to those it has already wasted. Such prejudice to the judicial system justifies the entry of default judgment against defendant. *See Shea,* 795 F.2d at 1075–76.

Furthermore, permitting defendant to abuse the discovery process and to obtain advantages through delay would discourage other litigants who contemplate bringing actions against the District of Columbia and its officials. Defendant's abuses have been directed at a plaintiff represented by court-appointed counsel on a pro bono basis, and defendant's misconduct has substantially increased the amount of time plaintiff's counsel has had to spend on this case. If defendant is permitted to profit from his abuse of the discovery process, private attorneys will be forced to avoid accepting pro bono or contingent-fee cases in which the District of Columbia or its officers are involved, knowing that they will probably face extended discovery battles. Defendant's misconduct could make it more difficult for others to obtain the justice they deserve, and an entry of default judgment is therefore necessary to "provide *meaningful* access for other prospective litigants to overcrowded courts." *Id.* at 1076 (citing *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 42 (2d Cir.1982)) (emphasis supplied).

Default judgment is also justified because plaintiff has been prejudiced by defendant's abuse of the discovery process. The events which led plaintiff to file suit transpired eight years ago, and every day of delay caused by defendant's misconduct makes it less likely that plaintiff will be able to locate the witnesses and documents he needs to build his case. It is impossible to know how much plaintiff's case may have suffered because of defendant's obstructive tactics, and it is for this reason that "even without a showing of actual prejudice, ... prejudice ... resulting from unreasonable delay may be presumed." *Shea v. Donohoe Const. Co.,* 795 F.2d 1071, 1075 (D.C.Cir.1986) (citing *Lyell Theatre Corp. v. Loews Corp.,* 682 F.2d 37, 43 (2d Cir.1982)). Defendant has offered no evidence to rebut this presumption of prejudice, resting instead upon his false assertions that "the answers are sufficient" and that any discovery defendant has not provided is "not relevant anyway." Transcript of Status Hearing, March 7, 1990, at 14–15. It is therefore reasonable to presume that plaintiff's trial preparation has been prejudiced, and this is a relevant consideration in determining whether entry of default is appropriate. *Black Panther Party v. Smith,* 661 F.2d 1243, 1255 (D.C. Cir.1981).

It is also important to note that plaintiff's conduct has been exemplary throughout these discovery disputes. "When a court is deciding whether to impose sanctions on one party, the behavior of the other party deserves some consideration." *Id.* at 1280. Plaintiff's filings have been well-organized and timely, he has promptly complied with all court orders, and he has responded to defendant's discovery requests. This commendable behavior contrasts sharply with defendant's misconduct, and is a further justification for the imposition of stringent sanctions.

The most compelling reason to enter default judgment against defendant, however, is the "need to sanction conduct that is disrespectful to the court and to deter similar misconduct in the future." *Shea v. Donohoe Const. Co.,* 795 F.2d 1071, 1077 (D.C.Cir.1986). If defendant's misconduct went unpunished, other litigants might be tempted to abuse the discovery process in the future. This would "embroil trial judges in day-to-day supervision of discovery, a result directly contrary to the overall scheme of the federal discovery

rules." *Dellums v. Powell*, 566 F.2d 231, 236 (D.C.Cir.1977). Defendant's status as a government entity makes the need for deterrence even greater:

> The effectiveness of and need for harsh measures is particularly evident when the disobedient party is the government. The public interest requires not only that Court orders be obeyed but further that Governmental agencies which are charged with the enforcement of laws should set the example of compliance with court orders.... [I]f the cause of the government's failures to comply with court orders is understaffing, then perhaps harsh measures will encourage those charged with funding and allocating personnel ... to take ameliorating action.

*United States v. Sumitomo Marine & Fire Ins. Co.*, 617 F.2d 1365, 1370 (9th Cir.1980) (citation and internal quotation marks omitted).

The entry of default judgment is a severe sanction, and it should be imposed "only when lesser sanctions would not serve the interest of justice." *Bristol Petroleum Corp. v. Harris, Id.* Defendant's behavior in this and other cases has amply proven that less severe sanctions would not effectively deter future misconduct. In its October 31 order, this court granted plaintiff's motion to compel and levied a $300 sanction against defendant. This was clearly not enough to deter defendant from future abusive conduct, as he proceeded to disobey the order by failing to file discovery responses and failing to pay the fine. Furthermore, the sanctions this court has imposed upon defendant in previous litigation have failed to ensure his compliance with discovery orders. In *Covington v. District of Columbia*, No. 87–2658 (D.D.C. Feb. 26, 1990) (slip op.), the District of Columbia was represented by Assistant Corporation Counsel Harry T. Alexander, who is also representing defendant in this case. In *Covington* this court sanctioned the District for failure to respond to plaintiff's requests for admissions and for failure to correct deficiencies in its responses to plaintiff's discovery requests. In denying the District's motion to reconsider the sanctions, this court noted that "the Corporation Counsel has failed to demonstrate that any corrective action whatsoever has been taken to preclude recurrence of the same derelictions in this and other cases." *Id.*, slip op. at 15. This court declined to enter a default judgment against the District, but instead merely deemed plaintiff's requests for admissions admitted. These sanctions were imposed on October 18, 1989, while Mr. Alexander was simultaneously ignoring discovery requests in this case.

Defendant's failure to comply with this court's October 31 order shows that despite the imposition of lesser sanctions in *Covington* and in this case, the Office of the Corporation Counsel has still failed to take any corrective action "to preclude recurrence of the same derelictions in this and other cases." This court noted in *Covington* that the Corporation Counsel may not "fail to obey court-ordered discovery deadlines, repeatedly delay trials, and single-handedly deny plaintiffs their rights to their day in court, and never be held accountable." *Id.* Yet this is precisely the sort of behavior which defendant has demonstrated in this case. The protracted, willful, inexcusable abuse of the discovery process by Mr. Alexander, the District of Columbia, and defendant has thus forced the court to enter a default judgment in this case, in order to ensure that abuses such as these will not continue.

It is important to note that the restrictions upon dismissals and defaults established in *Shea v. Donohoe Construction Co.*, 795 F.2d 1071 (D.C.Cir.1986), should not apply to the circumstances of this case. In *Shea* the Court of Appeals announced that it would "look disfavorably upon dismissals as sanctions for attorney misconduct or delay *unless the client himself has been made aware of the problem, usually through notice from the trial court.*" 795 F.2d at 1078. The purpose of this ruling was "to ensure that the proper individuals are being sanctioned (or deterred) and that the sanctions or deterrent measures are not overly harsh." *Id.* at 1077. The suggestion that district courts communicate di-

8

rectly with innocent clients was intended to give the client an opportunity to "be in touch with his lawyer to ensure future compliance with court orders, or to make arrangements for new counsel." *Id.* at 1078.

When the recalcitrant party is an institution with a legal division which regularly handles all its litigation, however, there is no longer any need to protect an innocent client. The guilty attorney, as employee and agent of his client, is the institution's sole representative before the court. He does not represent an individual; he represents an institution of which he is a part. The District of Columbia, whose attorney in this case is Assistant Corporation Counsel Alexander, cannot be "contacted" and advised to look around for another attorney. *See United States for the Use of M-Co Const., Inc. v. Shipco General, Inc.,* 814 F.2d 1011, 1014 (5th Cir.1987) (entry of default judgment without notice to corporate client was not unjust when author of default was defendant's regular counsel, who had continuity of employment with defendant). Nor would it make any sense for this court to communicate directly with Mr. Alexander's immediate superiors in the Office of the Corporation Counsel. His knowledge is their knowledge. Indeed, the names of Mr. Alexander's superiors appear above his signature on every document he has filed in this case. Furthermore, Mr. Alexander's superiors were certainly aware of his past problems with the discovery process, as he had represented the District of Columbia when it was subjected to discovery sanctions in *Covington v. District of Columbia,* No. 87–2658 (D.D.C. Feb. 26, 1990) (slip op.). The Court of Appeals clearly did not intend *Shea* to preclude dismissal or default in a case such as this, for "[w]hen the client is aware, or should be aware, of his attorney's misconduct, it is not unjust to penalize him." *Shea,* 795 F.2d at 1078.

### C. *Payment of fees and costs*

■ If a party fails to obey a discovery order, Fed.R.Civ.P. 37(b)(2) requires the court to assess against that party, "or the attorney advising him or both," the reasonable expenses of the party seeking discovery which were caused by the failure to obey. *Weisberg v. Webster,* 749 F.2d 864, 873 (D.C.Cir.1984). This is to be done unless the court finds that the failure was substantially justified or that the award would be otherwise unjust. *Id.* Defendant has not offered any explanation of why he failed to comply with the October 31 order, or of why he did not move the court for an extension of time or for reconsideration of the order. He has not so much as attempted to demonstrate that their failure to comply was "substantially justified." Furthermore, defendant has violated Fed.R.Civ.P. 26(g), which "requires that the attorney make a reasonable inquiry into the factual basis of his [discovery] response." Advisory Committee Note (1983) to Fed.R.Civ.P. 26(g). For these reasons this court orders defendant to pay the attorney's fees, costs, and other expenses incurred by plaintiff in obtaining this order.

### D. *Contempt*

■ Fed.R.Civ.P. 37(b)(2)(D) authorizes a district court to treat any failure to obey a discovery order (except an order to submit to a physical or mental examination) as contempt of court. Although it is clear that Assistant Corporation Counsel Alexander ignored this court's October 31 order, and contributed substantially to defendant's abuse of the discovery process, the court does not have sufficient information about the personal responsibility of Mr. Alexander for these actions, as opposed to the responsibility of his superiors, including the Corporation Counsel personally. That determination will be made in another case, on another occasion, if corrective action is not taken by the responsible District of Columbia officials. Contempt will not be a sanction imposed in this case, at least for conduct up to this date.

### CONCLUSION

For these reasons, it is hereby ORDERED that:

1. Defendant shall pay to plaintiff James Monroe the attorney's fees, costs,

and other expenses incurred by plaintiff in obtaining this order.

2. A default judgment is entered against defendant, and a hearing shall be held on November 21, 1990, at 9:30 a.m., to determine the exact amount due plaintiff as sanctions and to hear argument on the relief to which plaintiff is entitled as a result of this default judgment.

3. Plaintiff shall file and serve his proposed relief order and all supporting material by November 9, 1990. Any written comments by defendant shall be filed and served no later than November 19, 1990.

SO ORDERED.