**GENERAL ENVIRONMENTAL SCIENCE CORPORATION, Plaintiff,**

v.

**Frank L. HORSFALL, et al., Defendants.**

**No. 1:90–CV–1340.**

United States District Court, N.D. Ohio, E.D.

April 4, 1991.

---

Jerome F. Weiss, William T. Davis, Weiss, Neiditz & Associates, Cleveland, Ohio, for plaintiff.

Thomas C. Buford, Jason Collier Blackford, Weston, Hurd, Fallon, Paisley & Howley, Cleveland, Ohio, for defendants.

## ORDER

BATTISTI, District Judge.

Before the court are: (1) Plaintiff General Environmental Science Corp.'s ("GES") Motion to Compel; (2) Defendants Biosys Corporation ("Biosys"), Gustavo Gysler, John L. Strauss and Frank L.·Horsfall's Motion for a Protective Order; (3) Defendants Biosys and Gysler's Motion for a Protective Order Against a Deposition in the United States; and (4) Defendant Horsfall's Motion to Compel Discovery.

The facts of this case were stated by the court in a previous opinion. *General Environmental Science Corp. v. Horsfall*, 753 F.Supp. 664 (N.D.Ohio 1990). Further details are best left to be raised in the context of the motion to which they are most relevant.

## I. PLAINTIFF'S MOTION TO COMPEL

At the heart of the discovery dispute between the two parties is information about the Biosphere Corporation ("Biosphere"), a non-party Swiss corporation. The Defendants have refused to answer interrogatories and deposition questions or to provide documents which relate to Biosphere. The Defendants argue that Biosphere is an active, separate and distinct entity, and therefore, need not respond to discovery requests arising from a civil action in the courts of the United States.

Plaintiff, on the other hand, alleges that the Biosphere is a sham, created for the dual purpose of evading discovery and illegally competing with GES. Plaintiffs further claim that since Gysler, Horsfall and Strauss are owners and officers of

Biosphere, they can be compelled to produce documents which are in their control, provided that the information is discoverable.

Due to the importance of this issue to the orderly development of this action, the court heard arguments from the parties in open court on February 6, 1991. For the reasons stated herein, the Plaintiff's Motion to Compel is Granted, and the Court adopts the Plaintiff's Proposed Confidentiality Order.

■ The court will focus first on Plaintiff's request for documents. Federal Rule of Civil Procedure 34 provides for discovery of documents in the "possession, custody or control" of a party to an action, provided that the documents "constitute or contain" matters within the proper scope of discovery as defined in Rule 26(b). The questions before the court, therefore, are whether the documents concerning Biosphere are discoverable, and if so whether they are in the control of the Defendants. On these issues, the evidence presented by the Plaintiff is overwhelming.

It is clear that the Plaintiff is not attempting to conduct a fishing expedition, but instead, seeks to acquire documents that go to the very heart of its allegations that the Defendants have engaged in a fraudulent scheme to appropriate GES trade secrets and proprietary information.

The key to Plaintiff's argument is the Affidavit of Karl F. Ehrlich, taken July 25, 1990 and affixed to Plaintiff's Motion to Compel as Exhibit F (hereinafter the "Ehrlich Affidavit"), which provides independent support for Plaintiff's version of the facts.

Ehrlich is the co-founder of Aquaresearch Ltd. ("Aquaresearch"), a GES customer, and a Biosys acquisition target.[1] Ehrlich Affidavit at ¶ 1. During August,

1989, Strauss and Horsfall travelled to Aquaresearch's headquarters in Quebec to propose its acquisition by ABT. *Id.* at ¶ 5. Ehrlich claims to have been told that: (1) the three principals of ABT were Gysler, Strauss and Horsfall; (2) Strauss provided marketing expertise, Gysler administered the company and provided expertise in structuring shell corporations, and Horsfall provided technical support in the microbiology area; (3) ABT planned to apply for patents for products and processes similar to those used and marketed by GES; and (4) because of this product overlap Horsfall and Strauss were not publicly acknowledged as principals of ABT.[2] *Id.* at ¶ 6.

Ehrlich further claims to have been told that ABT, at that time operating as the X–O Corporation ("X–O"), was "entering into a contract with GES that they never intended to honor, and that they planned in the future to break ... as soon as they could set up their own production facilities[,] and that they would use product variability and potency as a basis for breaking the contract and competing. *Id.* at 8. Ehrlich makes a similar claim in a December 29, 1989 letter to Gysler and Strauss in which he states:

> We were told that the patents were submitted in the UK but that you are not identifiable, because your attorneys or secretary or whomever are listed as in charge of ABT. This was necessary as I understand because of your non-compete contract with GES, which you intend to break, based on product nonconsistency, once you have developed your own production facilities.

*Id.,* Exhibit 3. On May 4, 1990 and May 15, 1990, Gysler sent letters to GES attempting to repudiate the contract between GES and X–O on the basis of product variability. Plaintiff's Supplemental Brief in Opposition

---

1. At the time Biosys was known as Applied Bio–Technology ("ABT"). It is not clear whether ABT subsequently changed its name to the X–O Corporation, and then to Biosys, or whether all three are separate corporate entities. Needless to say, it is somewhat difficult to follow the ball amidst the plethora of corporate entities that the Defendants have left in their wake.

2. As was noted in this court's prior opinion, both Strauss and Horsfall were bound at that time by non-competition clauses in their contracts with GES. *General Environmental Science Corp. v. Horsfall,* 753 F.Supp. 664, 666 (N.D.Ohio 1990).

to Defendants Biosys Corporation and Gustavo Gysler's Motion to Dismiss, Exhibit D.

The events leading up to this litigation lend a great deal of credibility to Ehrlich's statements, including the claim that Gysler was represented as an expert in the formation of shell corporations. Notably, on May 4, 1990, the date of the first letter attempting to repudiate the X–O Contract, Biosphere was formed, with Gysler listed as its Managing Director.

The documents sought are relevant and appear reasonably calculated to lead to the discovery of admissable evidence.

The court, therefore, looks to the law concerning the scope of the term "control" as used in Rule 34. In the context of Rule 34, "[c]ontrol is defined not only as possession, but as the legal right to obtain the documents requested upon demand." *Searock v. Stripling,* 736 F.2d 650, 653 (11th Cir.1984).

Initially in arguing this motion, the parties focused on the relationship between Biosys and Biosphere. The Plaintiff claimed, and still claims, that Biosys and Biosphere are alter egos that have repeatedly exercised control over the others' documents and proprietary information.

A particularly stark example of this is presented by two letters, dated August 3, 1990, from Gysler to a Biosys/Biosphere client, Eldorado. Reply Memorandum in Support of Plaintiff's Motion to Compel Discovery, Exhibits I & J. The first letter, written on Biosys stationery and signed on behalf of Biosys, informs Eldorado that some contamination has been found in the "old product." The second letter, written on Biosphere stationery and signed on behalf of Biosphere, states that "the recent quality problem found by Biosys ... in the old Bioclean product has no relation to the new Bioclean II UHC Concentrate product, produced by us in Switzerland, which we

have recently shipped to you." Both letters, however, are signed by Gysler, have the same address, phone number and fax number, and significantly, have fax label headings that identify them as communications from Biosphere.

In addition, through the discovery process, the Defendants have provided to the Plaintiff other documents which, according to their fax label headings, were sent by Biosphere. Plaintiff's Motion to Compel Discovery, Exhibits G & H.

As the Plaintiff has pointed out, a number of courts have compelled a corporate party to a lawsuit to obtain documents in the possession of a corporate non-party where there existed a sufficient structural interlocking of the two companies. *See, e.g., Gerling International Insurance Co. v. Commissioner of Internal Revenue,* 839 F.2d 131, 140–41 (3rd Cir.1988) (citing numerous cases in which the requisite control was found to exist between parents and subsidiaries, and sister corporations).[3]

The Defendants vehemently object to the suggestion that Biosys and Biosphere are alter egos, and have presented extensive arguments to the contrary, based upon both the case law and facts drawn from various affidavits.[4] It is not, however, necessary for the court to make a determination on this issue. Even if Biosys does not have control over the requested documents, Gysler, as the Managing Director of Biosphere, certainly has legal access to and control over the documents at issue.

■ An individual party to a lawsuit can be compelled to produce relevant information and documents relating to a non-party corporation of which it is an officer, director or shareholder. In *Weaver v. Gross,* 107 F.R.D. 715, 716 (D.D.C.1985), the court compelled an individual defendant who was the president and chief executive officer of a non-party corporation to answer interrog-

---

**3.** The *Gerling* case is not directly analogous to this case because in *Gerling* the corporate officer from whom information was sought was not a party to the suit.

**4.** The overlapping ownership of Biosys and Biosphere, however, provides evidence of significant structural interrelation between the two

companies. At times relevant to Plaintiff's Complaint, Gysler and his father owned 83% of the equity of Biosys, and Strauss and Horsfall, according to the Ehrlich Affidavit, were silent partners in the venture. These three Defendants also own 68.5% of Biosphere.

atories about the corporation and provide corporate documents. The court held that the roles of the corporation and the individual defendant were "inextricably intertwined, especially where there is a basis in fact for concluding that [the president and CEO] did have a pervasive influence in corporate activities." *Id.* at 718. *See also A.F.L. Falck, S.p.A. v. E.A. Karay Co., Inc.*, 131 F.R.D. 46, 48–49 (S.D.N.Y.1990) (compelling individual respondent to produce corporate documents from two nonparty corporations over which he exercises control); *Scott v. Arex, Inc.*, 124 F.R.D. 39, 41 (D.Conn.1989) (compelling owner of corporations to answer interrogatories and produce documents regarding the companies' payrolls); *Haseotes v. Abacab International Computers, Inc.*, 120 F.R.D. 12, 15 (D.Mass.1988) (holding that "individual defendants as officers, directors, and shareholders ... can be required to produce documents that are in the possession of the corporation.").

The limited evidence available to the court about Biosphere indicates that it is largely controlled by the individual Defendants to this action. They own a majority of its equity, and Gysler is its Managing Director. The Defendants undoubtedly exercise control over the documents requested, and must provide them to the Plaintiff.

Inasmuch as information about Biosphere is within the scope of Rule 26(b), all Defendants are also ordered to answer Plaintiff's interrogatories and deposition questions concerning Biosphere. Gysler, Strauss and Horsfall, in particular, as owners and employees of Biosphere, have no right to refuse to provide the information requested by the Plaintiff.

In addition, all Defendants are advised to reexamine the analysis of Article 273 of the Swiss Penal Code provided in this court's order of September 14, 1990. Inasmuch as the Defendants own a majority interest in Biosphere, they can hardly expect to hide behind Article 273.

Accordingly, the motion to compel is GRANTED and the Defendants are ordered to provide information responsive to the Plaintiff's discovery requests regarding Biosphere within twenty (20) days of the issuance of this order.

In addition, the Plaintiff's motion for an award of costs and attorney's fees is GRANTED. The Plaintiff will submit a detailed accounting of costs and attorney's fees arising from this motion to compel.

Finally, having evaluated the various confidentiality orders submitted by the parties, the court enters the attached order, drafted by the Plaintiff.

## II. DEFENDANTS' MOTION FOR A PROTECTIVE ORDER

■ The confidentiality order entered by the court provides sufficient protection to the Defendants. Accordingly, the motion for a protective order is DENIED. Plaintiff's request for an award of costs and attorney's fees is DENIED.

## III. HORSFALL'S MOTION TO COMPEL

■ The Plaintiff has indicated that it is willing to respond to Horsfall's interrogatories, provided that the responses are protected by a confidentiality order. Inasmuch as the court has agreed to enter the Plaintiff's proposed confidentiality order, the motion to compel is GRANTED. In addition, the cross motions for an award of costs and attorney's fees are DENIED.

## IV. BIOSYS AND GYSLER'S MOTION FOR A PROTECTIVE ORDER

The motion for a protective order is DENIED. The costs of the depositions will be assessed pursuant to Federal Rule of Civil Procedure 54(d) at the end of this action. The Defendants are ordered to present themselves in Cleveland for depositions within twenty (20) days of the entry of this order.

## V. CONCLUSION

In summary, the court has made the following rulings: (1) Plaintiff's motion to compel is GRANTED, and the Plaintiff is awarded the reasonable expenses, including attorney's fees, incurred in obtaining this order; (2) The Defendants' motion for

a protective order is DENIED, and the Plaintiff's motion for an award of costs and attorney's fees is DENIED; (3) Horsfall's motion to compel is GRANTED, and the cross motions for an award of costs and attorney's fees are DENIED; (4) Biosys and Gysler's motion for a protective order is DENIED; and (5) the attached confidentiality order is entered.

IT IS SO ORDERED.

## APPENDIX

### ORDER OF CONFIDENTIALITY

IT IS HEREBY ORDERED as follows that,

1. Any party herein producing copies of documents ("producing party") may designate some or all of such documents as "confidential" by stamping them as "confidential," or by clearly designating documents as confidential in a separate statement, only if the producing party believes, in good faith, that such documents contain or reflect trade secrets, non-public proprietary or commercial information or other confidential matters for which a protective order would be legally justified under Rule 26(c), Fed.R.Civ.P.

2. As used herein, "qualified person" means, in addition to this Court, an individual who is:

(a) Counsel to any of the parties herein, including paralegals, secretary, and other such employees of such counsel who are assisting counsel in this litigation;

(b) An expert consulted by such counsel in connection with the prosecution or defense of this litigation, provided that such expert may examine confidential information solely for the purpose of providing assistance to counsel in connection with the litigation and may not reveal such confidential information to any other person not bound by this Order;

(c) Any defendant in this action, including any person who becomes a defendant subsequent to the execution of this Order;

(d) Any plaintiff in this action, including any person who becomes a plaintiff subsequent to the execution of this Order;

(e) Any person whom a party intends in good faith to call as a witness at the trial of this proceeding and any person whom a party in good faith believes will be called at the trial of this proceeding;

(f) Court reporters while in the performance of their official duties, provided that such persons may retain confidential documents only as long as is necessary for the conduct of their duties in this litigation. Further, plaintiffs and defendants reserve the right to make applications on motion with notice to the Court for the inclusion of any additional category of "witness" as a qualified person.

3. Confidential materials and information provided by or on behalf of any person shall not be made available by any person to persons other than qualified persons, except as provided herein. Prior to the disclosure of any confidential information to any person authorized to inspect such information under Paragraph 2 above, with the exception of persons referenced in Paragraph 2(a), such person shall execute under oath an "Agreement To Be Bound by Order Regarding Confidentiality" in the form attached hereto.

4. If any party produces documents by making original documents available for inspection and copying, then at the time of inspection all such documents shall be deemed "confidential" within the meaning of this Order. The inspecting party shall then designate the original documents for copying, and the producing party shall designate on the copies those documents which the producing party deems to be "confidential" within the meaning of this Order. Any copies not so designated shall not be deemed "confidential" within the meaning of this Order.

5. Information disclosed or documents referred to at the deposition of any witness, including a party or one of its present or former officers, directors, employers, agents, or independent experts, may be designated by any party as confidential, in accordance with the criteria set forth in

Section 1 of this Order, by indicating to the other parties which pages, page or portions of a page of a deposition transcript and which documents contain such confidential information. The party wishing to designate such material as confidential must do so within twenty days after receipt of the transcript. Until such time as that designation is made or the 20 days expire, the whole transcript and all documents referred to therein shall be deemed confidential.

6. All confidential discovery material and the information contained therein or derived therefrom may be used solely for purposes of this action and may not be used for any other purpose, including, without limitation, any competitive purpose.

7. Confidential materials covered by this Order which are used in connection with any motion, hearing, or other proceeding herein shall be filed under seal and submitted to the Court *in camera.*

8. The Clerk of the Court is directed to maintain under seal all documents, pleadings, or transcripts of deposition testimony filed with the Court in this litigation that a party has designated, in whole or in part, as confidential or as containing confidential information.

9. Upon the resolution of the disputes between the parties, the receiving party shall return to the producing party all documents containing confidential information or, if the parties agree, cause such documents to be destroyed. On request, a letter certifying such return or destruction shall be delivered by the receiving party to the producing party. All qualified persons who have been privy to such protected information shall, even after conclusion of the litigation, be under a continuing duty not to reveal such information for so long as such information is not otherwise available to the public.

10. Any party may seek to modify, expand, cancel, or supersede this agreement by stipulation of the parties or by motion on notice. Nothing herein shall:

(a) operate as an admission by any party that any particular discovery material contains or reflects trade secrets, non-public proprietary or commercial information or other confidential matters; or

(b) prejudice in any way the rights of any party to object to the production of documents it considers not subject to discovery; or

(c) prejudice in any way the rights of a party to seek a court determination of

(i) whether particular discovery material shall be produced; or

(ii) if produced, whether such material should be subject to the terms of this Order; or

(d) prejudice in any way the rights of a party to apply to the Court for a further order relating to any confidential information.

11. This Order does not purport to govern the handling of confidential discovery material introduced at trial or in other court proceedings related to this lawsuit. Protection of confidential discovery material in such proceedings is left to the further agreement of the parties and order of the Court.

12. In the event additional persons become parties to this litigation, they shall not have access to confidential information produced by or obtained from any other party to this action until the newly-joined party by its counsel and existing parties to this action have executed and filed with the Court this Order.

13. All counsel of record in this action and all members and employees of their respective law firms will take all steps reasonably necessary to comply with this Order.

14. Designation of any document as "confidential" does not mean that for any purposes that that document necessarily contains or reflects trade secrets or non-public proprietary or confidential information or other confidential matters. Such designation as "confidential" cannot be either a presumption, inference or evidence that such document contains or reflects trade secrets or non-public proprietary

commercial information or other confidential matters.

IT IS SO ORDERED.

### AGREEMENT TO BE BOUND BY ORDER REGARDING CONFIDENTIALITY

The undersigned hereby acknowledges that he/she has read the foregoing Order of Confidentiality in *General Environmental Science Corporation v. Frank Horsfall, et al.,* in the U.S. District Court, Northern District of Ohio, Case No. 1:90CV1340, and that he/she understands the terms of the Order and agrees to be bound by it.

_____
Name (Typed)

_____
Signature

STATE OF OHIO

   ss.

COUNTY OF CUYAHOGA

BEFORE ME, a Notary Public in and for said County and State, personally appeared the above-named _____, who acknowledged that he/she did sign the foregoing instrument and that the same is his/her free act and deed.

IN TESTIMONY WHEREOF, I have set my hand and official seal at _____, Ohio, this ____ day of _____, 1990.

_____
NOTARY PUBLIC