**GENERAL ENVIRONMENTAL SCIENCE CORPORATION,**
**Plaintiff,**

v.

**Frank L. HORSFALL,**
**et al., Defendants.**

**No. 1:90 CV 1340.**

United States District Court,
N.D. Ohio, E.D.

March 10, 1992.

**444**

Jerome F. Weiss, William T. Davis, Weiss, Neiditz & Assoc., Cleveland, Ohio, for plaintiff.

Stephen D. Walters, Jason T. Blackford, Thomas C. Buford, Mary C. Golrick, Weston, Hurd, Cleveland, Ohio, for defendants.

## ORDER

BATTISTI, District Judge.

This matter comes before the Court on Plaintiff General Environmental Science Corporation's Renewed Motion for Sanctions and the various memoranda, documents, deposition transcripts, affidavits and other materials submitted by the parties concerning this motion.

On November 26, 1991, the Court heard the arguments of counsel and testimony from Defendant Frank Horsfall. Plaintiff contends that Defendants have destroyed discoverable and inculpatory documents which were the subject of pending discovery requests and have otherwise obstructed discovery in such a manner that Plaintiff should be granted default judg-

ment, pursuant to Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure, on its complaint and that Defendant Biosys Corporation's counterclaim should be dismissed. Plaintiff also requests an award against Defendants and their counsel of all attorney fees and costs incurred by Plaintiff in this case. Defendants' position is that they have tried in good faith to comply with discovery requests and Orders of this Court and that Plaintiff is merely attempting to avoid a decision on the merits. For the reasons stated below, Plaintiff's Renewed Motion for Sanctions is granted.

In accordance with Federal Rule 52(a), the Court makes the following findings of fact and conclusions of law.

## FINDINGS OF FACT

1. General Environmental Science Corporation ("GES" or "Plaintiff") is a company headquartered in Cleveland, Ohio engaged in the world-wide sale of microbiological products used for bacterial augmentation in waste water treatment and aquaculture. GES is also engaged in other technical aspects relating to the treatment of water.

2. On July 27, 1990, GES filed a complaint alleging theft of trade secrets, fraud, RICO violations and other claims against Frank Horsfall ("Horsfall"), John Strauss ("Strauss"), Gustavo Gysler ("Gysler") and Biosys Corporation ("Biosys") (referred to collectively as "Defendants"). GES alleges that in 1989, Horsfall and Strauss, in the course of developing customers for GES product and technology in Europe, conspired with Gysler to steal the trade secrets of GES by forming a Swiss corporation to act as a distributor of GES product in Europe and then terminated the distributorship agreement with GES on the pretext of product variability and commenced to produce and sell a product derived from GES trade secrets. GES further alleges that Defendants terminated the contract between Biosys and GES by letter dated May 4, 1990. This scheme is outlined in the Affidavit of Karl Ehrlich ("Ehrlich") which is attached to the complaint. Ehrlich allegedly refused to join this conspiracy after Horsfall and Strauss reviewed it with him.

3. On July 30, 1990, this Court entered an Order setting a discovery deadline of September 30, 1990 and a hearing on Plaintiff's Motion for Preliminary Injunction for October 29, 1990.

4. On August 13, 1990 and August 14, 1990, respectively, GES noticed the depositions of Horsfall and Strauss. Horsfall filed a motion for protective order seeking to avoid a deposition on the ground that Swiss law protected him from being deposed. On September 14, 1990, the Court denied Horsfall's motion, characterizing his argument that he was protected by Swiss law as "nothing more than slight of hand."

5. Despite the September Order, Horsfall and Strauss refused to answer deposition questions,[1] refused to answer interrogatories,[2] and failed to produce documents on the ground that to do so would violate Swiss law.

6. On September 19, 1990, GES noticed the depositions of Gysler and Biosys. On September 25, 1990, Gysler and Biosys filed a motion for protective order seeking to be deposed in Switzerland under Swiss procedures.

7. On September 20, 1990, GES filed Plaintiff's Motion to Compel Discovery[3] requesting that the Court order Defendants to produce documents and provide answers to interrogatories and deposition questions.

---

1. For a list of the deposition questions Strauss and Horsfall refused to answer, see Reply Memorandum in Support of Plaintiff's Motion to Compel at 7–8 nn. 4 and 5.

2. Horsfall and Strauss responded to interrogatories concerning Biosys and Biosphere with the following objection:

 Objection to all disclosures relating to *Biosys* Corporation S.A. or *Biosphere* Corporation which may be a violation of the criminal law of Switzerland. I invoke a constitutional privilege not to disclose any trade secrets, information or documents which would subject me to criminal action in Switzerland.

3. GES supplemented its motion with additional filings on October 5, 1990, November 27, 1990 and December 7, 1990.

Plaintiff also requested an award of attorney fees and costs pursuant to Federal Rule 37. Defendants opposed the motion on the ground that Plaintiff had failed to comply with Swiss discovery procedures.

8. The evidence submitted in connection with Plaintiff's motion to compel revealed that on May 4, 1990, the same day that Defendants terminated their contract with GES via a letter reviewed and approved by defense counsel Jason Blackford, Defendants formed a new Swiss corporation called Biosphere Corporation ("Biosphere"). Defendants subsequently sought to avoid discovery about their current, allegedly competitive, activities with Plaintiff on the ground that all such information and documents were the property of Biosphere and that the individual Defendants, the principal officers and shareholders of Biosphere, were precluded by Swiss law from disclosing such information and documents.

9. In support of its motion to compel, Plaintiff presented the affidavit of Ehrlich who swore that Defendants attempted to induce him to enter into their scheme to defraud GES and told him that they would execute such scheme through the formation of shell corporations in which Gysler, trained as a lawyer, was an expert. Gysler subsequently confirmed, at deposition, his proficiency in forming shell corporations. (Gysler Depo. at 38–41, 757–60).

10. On October 8, 1990, the Court continued the hearing on Plaintiff's motion for preliminary injunction because of Defendants' obstruction of discovery through their refusal to answer interrogatories, answer deposition questions or produce documents. On November 28, 1990, the Court continued the hearing on GES's motion for preliminary injunction indefinitely in light of pending motions to compel discovery.

11. On February 6, 1991, the Court held a hearing on Plaintiff's motion to compel discovery and other discovery motions.

12. On April 4, 1991, the Court granted Plaintiff's motion to compel discovery and awarded Plaintiff attorney fees and costs. The Court found that GES was "not attempting to conduct a fishing expedition" and that Plaintiff's discovery requests "go to the very heart of its allegations that the Defendants have engaged in a fraudulent scheme to appropriate GES trade secrets and proprietary information." The Court also found that "Gysler, Strauss and Horsfall, in particular, as owners and employees of Biosphere, have no right to refuse to provide the information requested by the Plaintiff" and that "they can hardly expect to hide behind Article 273." 136 F.R.D. 130. The Court further ordered Defendants to provide all discovery within 20 days, including appearing for deposition in Cleveland, Ohio, within that time.

13. Despite the April Order, Defendants' counsel refused to provide dates for the depositions and informed Plaintiff's counsel that Defendants would not appear for deposition as noticed. Defendants also failed to produce any documents or interrogatory answers as ordered. Although defense counsel represented to the Court at the time that the delay was caused by the difficulty of communicating with their clients due to the distance between Switzerland and Cleveland,[4] Gysler testified that the real reason for the delay was that "we did not feel that we were obliged to obey the order, according to Swiss law." (Gysler Depo. at 560). Defense counsel also cited Plaintiff's alleged failure to comply with Swiss discovery rules as a reason for Defendants' failure to comply with the April Order.[5] Defense counsel also stated that one of the Defendants had not yet been advised of the April Order.[6]

14. Defendants failed to comply in any respect with the April Order.

---

**4.** This excuse is refuted by evidence of daily communications between Horsfall who was in Cleveland and the remaining Defendants who were in Switzerland.

**5.** *See* Exhibit I attached to Plaintiffs' Motion for Sanctions.

**6.** At the hearing, defense counsel stated that defendant in question was not notified because he was traveling. (Transcript of Hearing held November 26, 1991 ("Hearing Trans.") at 50).

15. On April 25, 1991, counsel for both parties met in an attempt to resolve this matter. No documents were produced and defense counsel was unable to provide firm dates for depositions or production of documents.

16. On April 26, 1991, GES filed Plaintiff's Motion for Sanctions seeking default judgment based on Defendants' failure to provide any of the discovery required by the April Order.

17. On May 15, 1991, the Court held a conference with counsel and ordered that Defendants comply with all discovery requests by May 21, 1991 and that Defendants' depositions be taken beginning May 28, 1991. The Court warned defense counsel that further intransigence on Defendants' part could lead to the imposition of ultimate sanctions.

18. On May 24, 1991, the Court entered an order finding that Defendant had violated the April Order. To prevent prejudice to Plaintiff, the Court enjoined Defendants from competing with GES and from disposing of particular property. The Court reiterated its warning to Defendants and awarded Plaintiff the attorney fees incurred in bringing the motion for sanctions and in responding to various motions filed by Defendants.

19. On May 24, 1991, Defendants filed Document A7077 under seal and asked "that the Court protect the confidentiality of the enclosed document, which contains secret formulations of Biosphere products. The Court is requested *not* to release or disclose the sealed document to Plaintiff or Plaintiff's counsel." In the notice of filing, Defendants stated that they were "prepared to satisfy this Court in camera, short of disclosure to Plaintiff or Plaintiff's counsel, that the formulations on Document A7077 differ in type and kind from the formulations of Plaintiff's products to which any Defendant herein had access at any time in the past."

20. There was no authority for filing Document A7077 under seal as the document was covered by the Order of Confidentiality contained in the April Order.

21. In defending the filing of Document A7077 under seal, defense counsel represented that the Court had implicitly agreed to decide the trade secret issues in this case ex parte by failing to mention Document A7077 in the May Order. Defense counsel stated that he was "sure the reason that Judge Battisti did not make reference to Document A7077 in [the May Order] was his recognition that this was the only fair and logical way to proceed." (*See* Exhibit D to Plaintiff's Renewed Motion for Sanctions).

22. The May Order was filed less than fifteen minutes after Document A7077 was filed under seal. Document A7077 was not brought to the Court's attention until well after it issued the May Order.

23. Defense counsel subsequently tried to justify his earlier explanation by stating: *how could defense counsel know or appreciate that his office had filed document A7077 only minutes before this Court filed its May 24th Order?* Given the flurry of activity as to more than 7000 documents and the arrangements to meet, for the first time, Defendant HORSFALL flying in from Switzerland for Deposition, *how could counsel, under this extreme pressure, know and understand the time frame?* (See Objections of Defendants to Misstatements in Plaintiff's Proposed Findings of Fact at 6 (emphasis in original)). At the hearing, defense counsel admitted that it was "highly unlikely that this Court contemplated document A7077 in [the May Order]." (Hearing Trans. at 31).

24. Despite the April and May Orders, Gysler instructed defense counsel not to disclose Document A7077 to Plaintiff under any circumstances. (Gysler Depo. at 567, 569). Gysler testified that "[w]hen we decided to supply the files of our company, in violation of Swiss law, we thought it was absolutely not necessary that these formulations be known to GES...." (*Id.* at 568).

25. Defense counsel refused to disclose Document A7077 despite repeated requests by GES counsel and a request by Horsfall. (Horsfall Depo. at 917). Counsel stated that they withheld Document A7077 "under

the direct instruction of Biosphere" and "with the full concurrence of all the Defendants." (Hearing Trans. at 32).

26. Document A7077 was an essential document since it would purportedly disclose similarities or dissimilarities between GES's and Defendants' products. Defendants claimed that the document contained "formulations of various products and constitutes a trade secret of the most sensitive nature of Biosphere Corporation, S.A."

27. Horsfall, Strauss and Gysler all testified that Document A7077 contained the formulations for the product line of Biosphere. (Horsfall Depo. at 874–75, 1268 and 1414; Strauss Depo. at 1009; Gysler Depo. at 80; and Hearing Trans. at 53).

28. Horsfall testified that Document A7077 was "a working document" which he and Strauss created. (Horsfall Depo. at 873; Strauss Depo. at 820, 1009–10). Defendants admit that predecessor documents to Document A7077 existed. The first such document was created in October 1990. (Horsfall Depo. at 874). Six successor documents were created and additions, deletions and modifications were made to the "working document" from time to time. (Horsfall Depo. at 952–53, 1185, 1411). These documents would purportedly trace the development of Defendants' products from the date they terminated their contract with GES. (Horsfall Depo. at 952–53). Horsfall admits destroying the predecessor documents to Document A7077. *Id.* According to Horsfall, the destruction continued from October 1990 to April or May 1991. *Id.*

29. Document A7077 and its predecessor documents were within the scope of Plaintiff's discovery requests and within the scope of documents Defendants were ordered to produce by the April and May Orders. Defendants were aware of the pending discovery requests and the Court orders. (Hearing Trans. at 71).

30. The nonproduction of Document A7077 and the destruction of its predecessors impeded the completion of depositions as ordered by the Court. Plaintiff also contends that the withholding precluded GES from doing technical research and preparation necessary to address the contents of the document and further delayed the retention and preparation of experts.

31. Horsfall denied taking any notes on the course of developing products Defendants used to compete with GES. (Horsfall Depo. at 877). However, Gysler testified that Horsfall kept "a kind of a book[7] where he puts down the daily—when there is a growth, there is the daily analysis, like pH, mainly pH, which is an important factor during growth." (Gysler Depo. at 571). Gysler testified that Horsfall took such notes as early as September or October 1990, two months after Plaintiff's document requests were served. (*Id.* at 573).

32. Gysler testified that Horsfall's working notes relating to the production of Defendant's product were destroyed. Horsfall confirms that no other documents exist regarding development of Defendants' products such as lab books, records of experiments, or testing data. (Horsfall Depo. at 877, 879, 880, 890, 931; Hearing Trans. at 61). According to Horsfall, few documents existed in regard to product development because the formula for the new products simply sprang from his head. (Hearing Trans. at 61).

33. Horsfall's notes were within the scope of Plaintiff's discovery requests and within the scope of documents Defendants were ordered to produce by the April and May Orders. Defendants were aware of the pending discovery requests and the Court orders. (Hearing Trans. at 71).

34. Defendants have destroyed documents that were within the scope of Plaintiff's discovery requests and were ordered to be produced by the April and May Orders.

35. The destruction of documents responsive to Plaintiff's discovery requests has prejudiced Plaintiff.

---

**7.** Gysler later clarified that Horsfall wrote his notes on a pad of paper as opposed to a laboratory notebook. (Gysler Depo. at 578).

36. Defendants, through Biosphere, have violated the May Order by engaging in bacterial treatment of waste water. (See also Horsfall Depo. at 901; Strauss Depo. at 889). On June 18, 1991, Bio Abengoa, a customer allegedly stolen from GES by Defendants [8] wrote to Gysler, after having been advised of the May Order, that "[a]ccording to this Order, it seems that we should stop immediately our activities." (See Exhibit I attached to Plaintiff's Renewed Motion for Sanctions). In response, Gysler noted that "Biosphere Corporation S.A. is not even a party to" this case and that "our counsel in the United States tells us that Biosphere Corporation S.A. is in complete compliance." (See Exhibit J attached to Plaintiff's Renewed Motion for Sanctions).

37. Defendants rely on an unsworn letter from J. Miro Chavarria, President of Bio Abengoa, to refute the allegations that they violated the injunction. The letter purportedly confirms "that our company Bio–Abengoa, S.A., is not purchasing and has never purchased any product or other material from either Biosys Corporation or Biosphere Corporation of Rolle, Switzerland." (See Exhibit A attached to Supplemental Memorandum and Evidence of Defendants' Discovery Compliance).

38. On October 10, 1991, the Court awarded Plaintiff attorney fees in the amount of $44,424.75.[9] Defendants subsequently requested clarification as to whether the award was against Defendants or against Defendants and their counsel. Before the Court could address their motion, Defendants appealed. Their appeal is currently pending.

39. On November 5, 1991, the Court scheduled the hearing on Plaintiff's Renewed Motion for Sanctions for November 7, 1991.

40. On November 6, 1991, defense counsel provided Document A7077 to Plaintiff's

counsel stating that "specific authorization for release of same having now been received from Biosphere."

41. The hearing was continued until November 26, 1991.

42. On November 26, 1991, the Court held a hearing on GES's Renewed Motion for Sanctions and Defendants' Motion to Compel Discovery.[10] The Court heard the arguments of counsel and the testimony of Horsfall. Horsfall's testimony concerning Document A7077 and the predecessor documents appeared to be void of credibility.

43. At the conclusion of the hearing, the Court asked Plaintiff's counsel to prepare proposed filings of fact and conclusions of law. The Court also granted defense counsel's request for leave to present, contemporaneously with Plaintiff, his own proposed findings and conclusions. 40. On December 2, 1991, defense counsel received from Defendants eight pages of documents purporting to be some of the documents which Defendants swore they had destroyed. Defense counsel did not apprise Plaintiff's counsel of his receipt of the documents, although he knew Plaintiff's counsel was preparing proposed findings of facts and conclusions of law.

44. On December 6, 1991, defense counsel sent to Plaintiff's counsel, by fax, a letter advising that he was filing some documents under seal and requesting an extension of time to file Defendants' findings of fact and conclusions of law. Without revealing the nature of the documents he intended to file, he suggested that Plaintiff's counsel might "wish to defer filing [its] proposed findings and conclusions until Monday."

45. Counsel for Plaintiff filed the proposed findings of fact and conclusions of law on December 6, 1991. Later that evening, defense counsel delivered to Plaintiff's counsel a Notice of Filing Under Seal

---

**8.** Gysler and Strauss admitted that Bio Abengoa was a customer of GES. (Gysler depo. at 28–29, 402; Strauss depo. at 808–10).

**9.** This order merely fixed the amount of fees which had been previously awarded by the April and May Orders.

**10.** Defendants' Motion to Compel was denied on December 18, 1991.

by Defendants and Request for One–Day Extension of Time, and Additional Filing by Defendants. With the Notice of Filing Defendants submitted eight pages of documents which they claim were predecessors to Document A7077. Defendants asked that they as well as Plaintiff be permitted a one-day extension to file their proposed findings and conclusions. Plaintiff did not request or consent to be included in this request for extension. Also included with the Notice of Filing was the affidavit of defense counsel stating that he received the documents from Gysler on December 2, 1991. He did not explain why he did not advise Plaintiff's counsel of the availability of these documents on December 2, 1991. Defendants also submitted an unsworn letter from Horsfall stating that he had located two of the documents in a plastic folder in the Biosphere laboratory and retrieved the other two documents from their computer using an "undelete" program.

46. In his Affidavit, Horsfall states that he "did not realize until [his] trip to Cleveland, Ohio on November 26, 1991 that Attorney Jerome Weiss was pressing an issue about alleged destruction of documents." He also stated that immediately upon returning to Switzerland, he searched Biosphere's premises. He failed to indicate why such a search was not conducted when the documents were originally requested or when they were ordered to be produced.

47. Both parties have filed affidavits of purported computer experts concerning the likelihood that Defendants were able to retrieve two predecessor documents to Document A7077 using an "undelete" program.

48. Any Conclusion of Law deemed a Finding of Fact is incorporated herein.

## CONCLUSIONS OF LAW

1. Any Finding of Fact deemed a Conclusion of Law is incorporated herein.

2. A district court has the inherent authority to sanction parties for discovery abuses. *Roadway Express, Inc. v. Piper*, 447 U.S. 752, 765, 100 S.Ct. 2455, 2463, 65 L.Ed.2d 488 (1980). If the abuses are egregious, default judgment is appropriate. *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1976); *Bank One of Cleveland, N.A. v. Abbe*, 916 F.2d 1067 (6th Cir.1990). The purpose of sanctions is "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *National Hockey League*, 427 U.S. at 643, 96 S.Ct. at 2781.

3. Federal Rule 37 provides in part that:

[i]f a party ... fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule ..., or if a party fails to obey an order entered under Rule 26(f), the court in which the action is pending may make such orders in regard to the failure as are just, [including]

. . . . .

*[a]n order ... dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;*

Federal Rule 37(b)(2)(C) (emphasis added).

4. The Sixth Circuit has set forth the following factors to be considered in determining whether default is an appropriate sanction for noncompliance with discovery orders: (1) whether the failure was due to the party's inability to comply with the discovery request or his willful bad faith or fault; (2) whether the plaintiff was prejudiced by defendant's noncompliance; (3) whether defendants were aware that their failure to cooperate could lead to dismissal; and (4) whether lesser sanctions would serve the goals of punishment and deterrence. *Abbe*, 916 F.2d at 1079.

5. The sanction of default judgment is particularly appropriate where a party destroys discoverable evidence, thereby making that evidence irretrievably unavailable to the opposing party and the trier of fact. *Wm. T. Thompson Co. v. General Nutrition Corp., Inc.*, 593 F.Supp. 1443 (C.D.Cal.1984).

Sanctions may be imposed against a litigant who is on notice that documents and information in its possession are relevant to litigation, or potential litigation, or are reasonably calculated to lead to the discovery of admissible evidence, and destroys such documents and information. While a litigant is under no duty to keep or retain every document in its possession once a complaint is filed, it is under a duty to preserve what it knows, or reasonably should know, is relevant in the action, is reasonably calculated to lead to the discovery of admissible evidence, is reasonably likely to be requested during discovery, and/or is the subject of a pending discovery request.

*Id.* at 1455.

■ 6. Defendants' conduct in this case presents a pattern of recurring obstruction of the discovery procedures set forth in the Federal Rules. Defendants have obstructed discovery in this case by blatantly refusing to provide Court ordered discovery, by filing motions for the purpose of delay, by attempting to relitigate points of law decided against them, by ignoring Court Orders with impunity and by destroying discoverable documents.

7. Defendants have used the procedures of the Federal Rules to secure delay after delay while destroying discoverable evidence.

8. Defendants have repeatedly attempted to relitigate points of law decided against them. Defendants have continued to invoke Swiss law as a shield against discovery even though this position was rejected by the Court less than two months after the case was filed. Defendants have also attempted to relitigate the issue of confidentiality despite the Order of Confidentiality contained in the April Order. Finally, Defendants repeatedly have objected to discovery on the grounds that Biosphere is not a party to this litigation despite the April Order finding that "Gysler, Strauss and Horsfall, in particular, as owners and employees of Biosphere, have no right to refuse to provide the information requested by Plaintiff."

9. Defendants have ignored and violated Court Orders with impunity. Defendants have refused to produce Court ordered discovery. Furthermore, Defendants have engaged in the bacterial treatment of waste water in violation of the May Order.

10. Defendants destroyed notes and the predecessor documents to Document A7077. Defendants do not contend that they were unaware of the document requests made by Plaintiff, or that the documents in issue were not within the scope of such document requests at the time the documents were destroyed. The documents were supposed to be produced in September and October 1990. At that time, Defendants withheld documents based on their purported belief that Swiss law protected them from producing the documents. However, pending this Court's ruling on the motion to compel discovery, Defendants were obligated to preserve responsive documents. Instead, Defendants destroyed the documents.

11. Defendants' conduct in this case confirms that the destruction of those documents was the result of either a bad faith scheme to destroy such documents or an intentional indifference to their discovery obligations.

■ 12. Plaintiff is both presumptively and in fact prejudiced by Defendants' destruction of documents. The destruction of documents creates a presumption that the missing documents would have permitted a plaintiff to prove the illegal conduct which is at the heart of its complaint. *Wm. T. Thompson Co.*, 593 F.Supp. at 1455. "Destroying the best evidence relating to the core issue in the case inflicts the ultimate prejudice upon the opposing party." *Computer Assocs. Int'l, Inc. v. American Fundware, Inc.*, 133 F.R.D. 166, 170 (D.Colo.1990). Prejudice derives from both the irretrievable loss of evidence and the inconvenience and expense suffered in uncovering and investigating the document destruction scheme. *Telectron, Inc. v. Overhead Door Corp.*, 116 F.R.D. 107, 132 (S.D.Fla.1987).

13. The destroyed documents apparently were the only primary scientific data

tracing the development of Defendants' product line which they use to compete with GES. Gysler's testimony that lab notes and other data existed is credible since it is highly unlikely that Defendants could have launched a whole product line overnight without some data demonstrating the development of such products. Defendants testified that they have no other lab books, test data, or other notes relating to product development, other than those which Gysler testified existed and were destroyed.

14. Plaintiff was entitled to the requested documents, especially Defendants' notes and data relating to their first efforts at product development which were likely to be more probative because of their closeness in time to Defendants' termination of the relationship with GES. *See Computer Assocs.*, 133 F.R.D. at 170 (default granted where Defendant had destroyed predecessor versions of computer program). The destroyed documents purportedly reflect the evolution of Defendants' product line which they have allegedly used to compete with GES since May 1990.

15. Plaintiff should not be required to rely on the highly questionable predecessors to Document A7077 which Defendants have produced after swearing that they no longer existed nor should Defendants profit from the destruction of their laboratory notes and other data.

16. Plaintiff has also been prejudiced by Defendants' continuing obstruction of discovery in this case. Because of Defendants' conduct, the hearing on Plaintiff's motion for preliminary injunction was continued indefinitely. Plaintiff was forced to respond to Defendants' attempts to relitigate points of law decided against them. Plaintiff was also forced to file motions to compel to obtain discoverable information.

17. At all times Defendants were able to produce the information and documents requested of them. However, Defendants resisted each and every discovery request made by Plaintiff and did so on grounds which Defendants and their counsel knew had already been rejected by this Court.

18. Defendants were aware that their records were the subject of discovery requests and motions pending before this Court at the time they were allegedly destroyed.

19. Defendants were repeatedly warned by the Court that their refusal to provide discovery could lead to application of ultimate sanctions by the Court.

20. No lesser sanction than default judgment will suffice. Imposition of a lesser sanction would only reward Defendants for their misconduct. *Wm. T. Thompson Co.*, 593 F.Supp. at 1455. "[A]ny lesser sanction would allow a party possessing evidence that would insure an adverse result to destroy that evidence with impunity, thus assuring defeat for the opponent while risking only a comparatively mild rebuke." *Computer Assocs.*, 133 F.R.D. at 170. Defendants' theft of trade secrets is relevant to every claim set forth in Plaintiff's Complaint, and is certainly relevant to the counterclaims set forth by Biosys. A financial penalty in the form of an award of attorney fees is clearly insufficient, since substantial attorney fees have already been awarded in this case with no deterrent effect, and a further award may turn out to be no sanction at all given that Defendants have attempted to place themselves in Switzerland beyond the process of this Court. Further, holding the specific issue of trade secrets to be precluded would, in effect, grant Plaintiff the default judgment sought. Finally, no lesser sanctions will retrieve documents which have already been destroyed, and Defendants will forever have the benefit of such destruction.

21. An order that Defendants resubmit to deposition and produce other documents which have been withheld is likewise futile. Such orders have been issued before and have been openly defied. Defendants have either refused to answer deposition questions or have withheld documents necessary for such depositions, thereby thwarting at least three attempts to complete the depositions. Further, it is unreasonable to require Plaintiff, his "counsel or this Court to engage in a constant battle against this

recalcitrant and obstructionist behavior." *Coleman v. Smith*, 814 F.2d 1142, 1146 (7th Cir.1987). The Court cannot referee every document request as it has this one.

22. Even if such orders were a feasible alternative, they would not compensate for the damage to the judicial process and the integrity of the result in this case occasioned by Defendants' destruction of documents. An important aspect of the application of Federal Rule 37 is not only its effect on the parties before the Court but its effect on other litigants. In *National Hockey League*, the district court dismissed the case after the plaintiffs' failure to answer written interrogatories. 427 U.S. 639, 96 S.Ct. 2778. The Court of Appeals reversed. The Supreme Court of the United States reversed, reinstating the district court's dismissal of the case.

> [T]he most severe in the spectrum of sanctions provided by statute or rule must be available to the District Court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent. If the decision of the Court of Appeals remained undisturbed in this case, it might well be that *these* respondents would faithfully comply with all future discovery orders entered by the District Court in this case. But other parties to other lawsuits would feel freer than we think Rule 37 contemplates they should feel free to flout other discovery orders of other District Courts.

*Id.* at 643, 96 S.Ct. at 2781.

23. Defendants' conduct is much more egregious than that at issue in *National Hockey League*. Any sanction less than default would permit Defendants to profit from the destruction and delay they have caused. No lesser sanctions are appropriate.

24. The mere fact that a party after months of delay and obstruction may feel chastened to comply upon imposition of the ultimate sanction is no basis for withholding that sanction. To permit a party to avoid ultimate sanctions based on a last minute tender of discovery would " 'introduce into litigation a sporting chance theory encouraging parties to withhold vital information from the other side with the hope that the withholding may not be discovered and, if so, that it would only result in a fine.' " *G–K Properties v. Redevelopment Agency of City of San Jose*, 577 F.2d 645 (9th Cir.1978). In *G–K Properties*, the appellate court upheld a district court's dismissal of a complaint with prejudice for failure to comply with discovery orders despite plaintiff's tender of discovery after the filing of a motion to dismiss. The Court of Appeals held:

> Here the court dismissed the Plaintiffs' action with prejudice. It acted properly in so doing. We encourage such orders. Litigants who are willful in halting the discovery process act in opposition to the authority of the court and cause impermissible prejudice to their opponents. It is even more important to note, in this era of crowded dockets, that they also deprive other litigants of an opportunity to use the courts as a serious dispute-settlement mechanism. Here the appellants' last-minute tender of relevant documents could not cure the problem they had previously created.

*Id.* at 647. Therefore, Defendants' last minute tender of Document A7077 and its alleged predecessors is no basis for declining to impose ultimate sanctions.

25. Furthermore, the circumstances in which documents were filed raise serious questions about their last-minute "discovery." Defendants and their counsel have maintained since May that these documents had been destroyed. Only when this Court had taken Plaintiff's Renewed Motion for Sanctions under advisement were these documents suddenly "discovered." The documents were discovered only days after Horsfall swore before this Court that the documents had been destroyed. These circumstances raise serious questions about the completeness of Defendants' production of other documents in this case. Although the alleged predecessors of Document A7077 have been "discovered," the laboratory notes and other

data which Gysler testified existed have not been produced.

26. The evidence permits the inference that Defendants only produced the documents to avoid judgment being entered against them as a discovery sanction. Documents originally requested in August 1990 were produced in December 1991 after multiple discovery motions, two court orders compelling discovery, four hearings and many warnings by the Court that ultimate sanctions would be imposed. Only when Defendants thought a judgment against them was imminent did they "produce" these documents.

27. The Court, having issued multiple orders compelling discovery, having warned defense counsel personally that ultimate sanctions would be considered if further resistance were encountered, and having awarded substantial attorney fees, is at a loss as to how to remedy this matter short of default judgment. The granting of a default judgment is the only way to stop the endless parade of discovery disputes Defendants have manufactured and required this Court to decide. This has been to the prejudice of GES and to other litigants who vie for the limited judicial resources available. Defendants' shams are at an end. In totality, Defendants' continuing obstruction of discovery in this case requires that this Court grant default judgment in favor of GES on its Complaint and dismiss with prejudice the counterclaim of Biosys.

28. Therefore, Defendants, their officers, agents, employees as well as any entities subject to their control, are hereby permanently enjoined and restrained from:

a) competing with Plaintiff in the manufacture, distribution or sale of microbiological technology, products and/or systems used for bacterial augmentation in waste water treatment and aquaculture;

b) using in any way the trade secrets of Plaintiff including but not limited to, formulas, processes or techniques related to Plaintiff's products and systems and the identity of Plaintiff's customers;

c) selling, transferring or otherwise disposing (without prior approval of the Court) of property which might be used to satisfy a judgment pursuant to R.C. § 2923.34;

d) transmitting to any third party, including but not limited to Novabio–Spain, Novabio–France, Cabinet Lebesque Fermentation, and Bio Abengoa, any information relative to the composition, manufacture or use of LLMO or similar products or data or systems involving LLMO or similar products;

e) selling or putting into the stream of commerce in whatever manner any micro-biological product relating to the purification or treatment of waste water and of aquaculture;

f) denigrating in any manner the LLMO products, or techniques, or personnel to any person, including but not limited to any authority or any customer or user; and

g) engaging in any of the activity alleged in the Complaint.

29. Federal Rule 37 provides that, in addition to the other sanctions imposed or orders issued, "the court shall require the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney's fees, caused by the failure" to provide discovery.

30. Furthermore, federal district courts retain inherent power to award attorney fees to punish bad faith abuse of process and emasculation of the Federal Rules. *Chambers v. NASCO, Inc.*, —— U.S. ——, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991). This power extends to assessing fees against a party as well as his attorneys. *In re Ruben*, 825 F.2d 977, 983 (6th Cir.1987), *cert. denied*, 485 U.S. 934, 108 S.Ct. 1108, 99 L.Ed.2d 269 (1988) (citation omitted).

31. In *Chambers*, the Supreme Court upheld an award against the defendant of the plaintiff's entire attorney fees in the case under the district court's inherent power. In *Chambers*, the defendants and counsel, although repeatedly warned by the district court, engaged in delaying and ob-

structive behavior, such as continuing to contest issues decided by this Court, and contesting issues until the last minute and then withdrawing their opposition, solely for the purpose of delay and harassment.

32. The district court retains discretion as to how it should exercise its inherent power. "A primary aspect of that discretion is the ability to fashion an appropriate sanction for conduct which abuses the judicial process." 111 S.Ct. at 2132–33. This discretion encompasses both dismissal of the entire case, or, of course, an award of attorney fees, and extends to an assessment of attorney fees against counsel as well as "attorney's fees representing the entire cost of the litigation." *Id.* at 2133. Attorney's fees may be awarded

> when a party "shows bad faith by delaying or disrupting the litigation or by hampering enforcement of a court order...." The imposition of sanctions in this instance transcends a court's equitable power concerning relations between the parties and reaches a court's inherent power to police itself, thus serving the dual purpose of "vindicat[ing] judicial authority without resort to the more drastic sanctions available for contempt of court and mak[ing] the prevailing party whole for expenses caused by his opponent's obstinacy."

*Id.*

33. The Court has already found that Defendants acted in bad faith. Therefore, Plaintiff is entitled to an award of all of their attorney fees and costs incurred in this litigation.

34. Counsel for Defendants are just as culpable. They too have displayed a willingness to frustrate and obstruct court orders.

35. Counsel continued to rely on Swiss discovery procedures to object to deposition questions, interrogatories and document requests, despite the September Order rejecting the applicability of Swiss discovery procedures to this case. Counsel's persistence in resisting discovery on the basis of Defendants' immunity under Swiss law delayed the production of documents and gave Defendants the opportunity to destroy documents.

36. Counsel advised their clients that the May Order was not applicable to Defendants' competition with GES so long as Defendants compete behind the mask of Biosphere, a point never refuted by counsel despite the opportunity. Since Defendants are virtually the sole officers, shareholders and employees of Biosphere, counsel's advice is highly contemptuous of this Court's rulings and perpetuates the Defendants' efforts to avoid liability through shell corporations.

37. Additionally, in filing Document A7077 under seal and withholding it from Plaintiff, defense counsel represented that the trade secrets issue could be decided on the basis of the contents of Document A7077. At the hearing on November 26, 1991, defense counsel attempted to minimize the significance of Document A7077 and its predecessors. The willingness of defense counsel to manipulate and fabricate facts to sustain whatever their current position might be is evidence of their bad faith.

38. Defense counsel's behavior even after the November 26, 1991 hearing demonstrates bad faith. Although counsel was in receipt of the alleged predecessors to Document A7077 on December 2, 1991 defense counsel did not make those documents available to Plaintiff or advise Plaintiff of the existence of such documents until 5:43 P.M. on Friday, December 6, 1991. Furthermore, defense counsel did not advise Plaintiff's counsel of the nature of such documents.

39. Counsel's assistance in obstructing discovery is particularly offensive given the fact that defense counsel represented Defendants and reviewed the documents whereby Biosys terminated its contract with GES in May 1990. Had defense counsel just been retained for this lawsuit their claims of good faith might have had more credence. However, because defense counsel were involved at the outset of the alleged scheme, well before the complaint was ever filed, they had every opportunity to assure timely discovery and the preser-

vation of records. Instead, defense counsel has, at every opportunity, resorted to whatever tactic is accommodative to delay this case, including attempts to trivialize Defendants' destruction of discoverable records.

40. Defense counsel's principal response to questions about Defendants' failure to provide discovery has been to claim that Plaintiff has no case on the merits. Counsel should be well aware that perceived weaknesses in an opponent's case are no justification for repeated violations of court orders.

> Such a position is intolerable. Plaintiff is entitled to try to prove his case no matter what Defendant may think of it, and Defendant is therefore obliged to provide Plaintiff with responses to his discovery requests. To even suggest that Defendant's opinion of Plaintiff's case should have any bearing upon the discovery process demonstrates willful disregard for the responsibilities Defendant owes the court and his opponents.

*Monroe v. Ridley*, 135 F.R.D. 1, 5 (D.D.C. 1990). Defendants raise this argument to distract from their own behavior and to take advantage of their destruction of documents related to the trade secret issue.

41. Federal Rule 37 and the inherent power of this court authorizes the award against Defendants and their counsel of attorney fees and expenses incurred by Plaintiff to date in this lawsuit. The actions of Defendants and their counsel were unreasonable under all circumstances. Rather than attempt to cooperate and bring this case to trial, Defendants and their counsel insisted on obstructing these proceedings repeatedly.

## CONCLUSION

For the reasons stated herein, Plaintiff's Renewed Motion for Sanctions is granted. Plaintiff is granted a default judgment on its complaint and Defendant Biosys's counterclaim is dismissed. As a further sanction, Defendants and their counsel are ordered to pay Plaintiff all of the attorney fees and costs incurred by Plaintiff in this case. All other motions are dismissed as moot. A trial on the issues of damages

will be commence on April 14, 1992 at 10:00.

IT IS SO ORDERED.